## No. 1254.

ROBERT McNAMARA VS. BOARD OF COMMISSIONERS OF THE TENSAS BASIN LEVEE DISTRICT.

A claim for damages for alleged breaches of contract and delays in execution can not be urged when the party has proceeded in the execution of the contract in the manner adopted without complaint or protest, or any notice of objection, when he has completed the work and received settlement without complaint or reserve, and when he has himself acknowledged that defendant had fully complied with all its obligations.

APPEAL from the Twenty-seventh District Court, Parish of Richland. *Williams, J.*

*H. P. Wells* for Defendant and Appellee.

*Moise & Titche* and *Boatner & Lamkin* for Plaintiff and Appellant:

Where a contractor is to build a certain levee according to certain plans and specifications, etc., to be furnished by a levee board, and the latter negligently delays furnishing said specifications, etc., and loss results, the levee board is liable therefor. Philadelphia, etc., Railroad Co. vs. Howard; 13 How. 307.

Where a contract is completed after the time stipulated for its performance, and the work done is accepted, the party accepting must pay for same. 13 How. 307.

A party receiving a contract to do certain work, which work is afterward awarded to a third person, is entitled to recover the profits he would have made had he been permitted to complete the contract.

" Where the obligation of one party to a contract requires of him the expenditure of a large sum in preparation to perform, and a continuous readiness to perform, the law implies a corresponding obligation on the other party to do what is necessary to enable the first to comply with his agreement." U. S. vs. Speed 8 Wall. 77; U. S. vs. Behan, 110 U. S. Rep. 338.

The opinion of the court was delivered by

FENNER. J. On August 31, 1887, the defendant advertised for proposals to build "Fulton Lake levee in Desha and Chicot counties, Arkansas." No further description of the work was given, but

the advertisement stated that "information as to location and character of the work may be obtained at the office of Capt. Wm. T. Rossell, Corps of Engineers, U. S. A., No. 106 Madison street, Memphis, Tenn., and at the office of the Board of State Engineers of Louisiana, New Orleans, La."

The record fails to disclose whether or not plaintiff resorted to this source of information before he made his bid; but it does appear that a plan of the proposed levee had been made and was on file at the offices of the engineers referred to.

However this may be, plaintiff made a bid at 18¾ cents per yard, which was accepted, and he then entered into a contract with defendant which made no reference to the plan above mentioned or to any other plan, and which prescribed neither location, length nor dimensions of the levee nor any specification as to quantity of work, but which simply nominated it as "the levee located and described as follows, viz.: the basin front on the Mississippi river, in the counties of Desha and Chicot, Ark., according to the plans, specifications and dimensions *to be* prescribed by the United States Engineer in charge of work on the Tensas front and approved by the State Engineer of Louisiana."

The contract contained the following further provisions, to-wit: that "the work shall be done under the direction and supervision of the engineer in charge, whose directions shall be complied with;" that "the contractors engage and agree to conform to the mode and order of constructing and locating the parts of the work as it progresses, which the engineer in charge may indicate;" and, finally, that "should the engineer in charge deem any changes necessary in the extent and location of the levee, or in the quanity of the work required, such changes shall be made by the contractors, at the same rate of compensation as herein stipulated, and should differences arise between the contractors and engineer in charge, the decision of the Board of State Engineers of the State of Louisiana shall be final and binding on the parties."

It thus conclusively appears that plaintiff's contract was not for the construction of a specific levee already planned and located, but of a levee to be thereafter planned and located by the United States engineers in charge, and subject, even then, to any changes in extent or location which the engineers might deem necessary, without affecting the rate of compensation; and that the only relief which

he could claim in case of objection to such changes was by appeal to the State Board of Engineers, which was made the final arbiter between the parties.

That the plaintiff acted rashly and improvidently in entering into so loose a contract can not be denied; but as he bound himself, so must he be bound.

After the contract, he went, for the first time, to the *locus* of the work, and after inspection he discovered that it could not be done at rate agreed upon. He thereupon declined to proceed unless the Levee Board would increase it to 25 cents per cubic yard, which the board agreed to do.

The line which had been provisionally laid out for the levee by the engineers seems to have been conditioned upon success in arranging with a railroad company in that region to close up with earth the trestles under its track, without which the levee as proposed would be useless and ineffective. The negotiations with the railroad company were still pending when plaintiff was ready to begin work, and hence he was detained for some time in beginning. The negotiations finally failed, and it became necessary to run the levee across Fulton Lake along a different line from that at first contemplated.

Plaintiff submitted to this delay and change of location without any complaint or protest to the defendant. As soon as the new line was laid out he proceeded with the work under his contract. The rainy season came on and filled the lake with water, which added greatly to the difficulty and expense of his work, but he still went on without complaint or protest to defendant. A break occurred on the front levee of the river which threatened destruction to his work and the engineer advised him to avert it by building a loop. He did so without protest and without setting up any claim on defendant.

A part of the work which had been originally assigned to him was taken away and given to another contractor.

He submitted to this without complaint or protest.

He finally completed his work, received certificates according to his contract and was settled with by the defendant, without a word of complaint or claim of any extra compensation.

Even after this he presented a petition to the defendant board, in which he represented the heavy losses he had sustained, "caused by circumstances which no man could either foresee or prevent," and he appealed to the board for some relief. This petition contains not

even a suggestion of any legal claim, and not a word of any charge against the defendant.

Both the secretary and the president of the board testify that "Mr. McNamara stated at the time that the board had treated him very nicely in raising the contract price from 18 7-8 to 25 cents per cubic yard, and that he did not claim that the board had not paid him every cent to which he was justly entitled under his contract."

It is significant that although plaintiff was recalled to the stand immediately after the above testimony was given, he does not explain or contradict it.

Only in September, 1890, about one year and a half after he had completed and been paid for his work, does he bring this suit, claiming from defendant the enormous sum of $64,538, as damages for alleged breaches of his contract.

It is evident that plaintiff, during the progress of the work, placed the same construction on his contract which was adopted by the defendant, and concedes the right of the United States engineers to change the location and extent of the levee. If he objected, his remedy was pointed out in the contract—to appeal to the State Board of Engineers, which he did not do.

If he intended to hold defendant liable for the delays to which he was subjected, he was bound to protest seasonably and to notify defendant of his complaint, which it might then have remedied by hastening the engineers.

If he intended to claim damages for the taking away of part of his work and assigning it to another contractor, he should have objected at the time and notified defendant, which might then have abstained from the transfer.

Similar remarks apply to all the items of damage claimed.

Justice forbids that, after having remained silent when he should have spoken, after leaving the defendant in ignorance of any complaint or charge of any kind against it during the whole time during which the complaints might have been obviated or satisfied, after having accepted settlement according to his contract without objection or reserve, after having acknowledged that defendant had fully executed all its obligations, and after appealing to its liberality to recoup his losses, for which he admitted he had no legal claim, he

should be permitted to take a position entirely inconsistent with his whole conduct and urge this ruinous claim for damages.

The judge *a quo* rightly rejected his demand.

Judgment affirmed.