(71 South. 787)

No. 20721.

REYNOLDS v. BOARD OF COM'RS OF ORLEANS LEVEE DIST.

(April 24, 1916. Rehearing Denied May 22, 1916.)

*(Syllabus by the Court.)*

1. LEVEES ⬥⟲16 — CONSTRUCTION—CONTRACT —INTERPRETATION.

The provision in a contract to build a levee that the decision of the executive committee of the levee board on differences arising between the contractor and the board's engineer in charge of the work shall be final and binding upon the parties refers only to matters over which the engineer has supervision and direction by the terms of the contract or by necessary implication.

[Ed. Note.—For other cases, see Levees, Cent. Dig. § 6; Dec. Dig. ⬥⟲16.]

2. LEVEES ⬥⟲16 — CONSTRUCTION—CONTRACT —VALIDITY.

To hold that the decision of the executive committee of the levee board, party to the contract, on any arbitrary dispute made by the board's engineer or on a dispute upon a matter not under his direction or supervision, is binding upon the contractor, would make the contract depend upon a potestative condition and render it null.

[Ed. Note.—For other cases, see Levees, Cent. Dig. § 6; Dec. Dig. ⬥⟲16.]

3. RELEASE ⬥⟲33—OPERATION AND EFFECT— SEVERAL CLAIMS.

The plaintiff, having sued on several claims, does not, by accepting payment of one of them with an express reservation of all his rights in the suit, waive or abandon his right to prosecute the suit on the remaining claims.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 78, 79; Dec. Dig. ⬥⟲33.]

4. LEVEES ⬥⟲16—CONSTRUCTION — CONTRACT —EXTRA WORK.

Where a contract for building a levee provides that the contractor may obtain earth from the adjacent battures, and the contractor has made his bid in contemplation of using the batture, and has gone to considerable expense planking the road to it, and the levee board thereafter deprives him of the use of the batture and compels him to transport earth a greater distance, he is entitled to compensation for the extra cost of transportation.

[Ed. Note.—For other cases, see Levees, Cent. Dig. § 6; Dec. Dig. ⬥⟲16.]

5. LEVEES ⬥⟲16—CONSTRUCTION — CONTRACT —"ADJACENT."

The term "adjacent to" is not restricted to the meaning "abutting," "adjoining," "con-

tiguous to," or "bordering upon." It has been held to mean "lying close by," "near to," or "in the neighborhood or vicinity of." Therefore, when the contractor and the engineer of the levee board in charge of the work of building a levee construe the expression in the contract "adjacent battures" to include the batture extending beyond the end of the levee, the contract should be carried out accordingly.

[Ed. Note.—For other cases, see Levees, Cent. Dig. § 6; Dec. Dig. ☜16.

For other definitions, see Words and Phrases, First and Second Series, Adjacent.]

6. LEVEES ☜16 — CONSTRUCTION—CONTRACT —EXTRA WORK.

Under the provision in a contract to build a levee that, if the executive committee of the levee board deems any change necessary in the extent or location of the levee or in the dimensions or quantity of work required, the contractor shall make the change at the same rate of compensation stipulated in the contract, provided such change shall not exceed 20 per cent. in excess or in diminution of the contract price, the executive committee increased the length of the levee to an extent exceeding 27 per cent. of the original contract price; and the contractor protested against doing the work at the rate of compensation stipulated in the contract for the work originally agreed upon, and did the additional work under protest and. reserving his right to demand the actual value of the additional work. Held, in a suit on a quantum meruit, the contractor is entitled to recover the actual value of the extra work required of him.

[Ed. Note.—For other cases, see Levees, Cent. Dig. § 6; Dec. Dig. ☜16.]

7. LEVEES ☜16 — CONSTRUCTION—INTERPRE- TATION OF CONTRACT —"CASUALTY."

Under the provision in a contract to build a levee, whereby the contractor assumes all risks from accidents and casualties of every kind that may occur before the completion and acceptance of the work, the contractor must bear the loss of material and work resulting from a cave or sinking of the ground under the levee before its completion or acceptance.

[Ed. Note.—For other cases, see Levees, Cent. Dig. § 6; Dec. Dig. ☜16.

For other definitions, see Words and Phrases, First and Second Series, Casualty.]

8. LEVEES ☜16 — CONSTRUCTION—CONTRACT —EXTRA WORK.

By the terms of a contract to build a levee the contractor was allowed to use dirt from the adjacent batture. Another contractor employed by the levee board to remove old piling from the river, under the supervision and direction of the board's engineer, and against the protest of the first contractor, used dynamite and caused the batture to recede and be lost. Held, the first contractor is entitled to compensation from the levee board for the excess cost of transporting the dirt a greater distance.

[Ed. Note.—For other cases, see Levees, Cent. Dig. § 6; Dec. Dig. ☜16.]

*(Additional Syllabus by Editorial Staff.)*

9. WORDS AND PHRASES—"CATASTROPHE."

"Catastrophe" means a notable disaster; a more serious calamity than might ordinarily be understood from the term "casualty."

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

Action by Hampton Reynolds against the Board of Commissioners of the Orleans Levee District. From a judgment for plaintiff, defendant appeals. Modified and affirmed.

James Wilkinson, of New Orleans, for appellant. George H. Terriberry and Parkerson & Parkerson, all of New Orleans, for appellee.

O'NIELL, J. The plaintiff, appellee, is the successor to Reynolds & Co., contractors, who built levees for the defendant under four separate contracts. When the work was completed and accepted by the board of commissioners, the plaintiff demanded compensation for extra work and losses which he claimed had been imposed upon him, amounting to $40,255.08 in excess of the original contracts. The board of levee commissioners referred the claims to its executive committee, who met and adopted a resolution, referring the matter to the board's attorney, and authorizing him to appoint an expert engineer to examine into the claims and make a report to the board or to the executive committee. It was suggested that Capt. Hardie, a member of the executive committee of the board and city engineer for New Orleans, pass upon the claims as an expert; but he declined on account of his official position, and suggested that the matter be referred to H. S. Douglas for his expert opinion as an engineer. The minutes of the meeting of the executive committee disclose that the plaintiff was present and expressed his willing-

ness to have the matter settled by an expert examination into his claims, and agreed to pay half of the expense.

It appears that the executive committee of the board approved four of the plaintiff's bills, agregating $2,385.86, viz.: Bill No. 4, contract No. 2 (for loss of time of the laborers in the plaintiff's employ getting out of the way of dynamite explosions by another contractor who was employed by the board to remove piling from the river near the new levee), $1,137.50, and force account bill on contract No. 2, $99.01, on contract No. 3, $209.83, and on contract No. 4, $939.52.

Pursuant to the resolution of the executive committee, the attorney for the board referred the remaining claims to the engineer, H. S. Douglas, for his expert opinion. Thereafter the plaintiff abandoned nine of his claims, aggregating $17,148.71, and of the remaining claims Mr. Douglas, in a detailed report to the attorney for the board recommended payment of the following, viz.:

(1) Contract No. 2, bill No. 5, for additional cost of hauling 6,000 cubic yards of earth a greater distance than was contemplated in the contract, caused by the alleged arbitrary withdrawal of permission to use the batture near the new levee .............................$ 1,500.00

(2) Contract No. 2, bill No. 7, for extra compensation for constructing a levee from the middle of Poland street, that is, from the end of the levee described in the contract, to Kentucky street, the claim being for the difference between the contract price of the work described in the contract and the alleged value of the extra work.................  4,200.00

(3) Contract No. 3, bill No. 1, for the loss of dirt deposited in place by the contractor and lost by the sinking of the foundation (plaintiff claimed $1,687.50), allowed...............   199.99

(4) Contract No. 4, bill No. 1, for earth lost by the sinking of the levee foundation in the vicinity of Eighth street, 2,700 cubic yards at 90 cents  2,430.00

(5) Contract No. 1, bill No. 5.......  2,039.13

(6) Contract No. 2, bill No. 9.......  3,419.55

Total recommended by Engineer Douglas for payment............$13,788.67

Mr. Douglas advised that one of the plaintiff's bills, referred to as contract No. 2, bill No. 6, amounting to $6,050, be not paid. It is for the loss of 11,000 cubic yards of earth that the plaintiff claims was blown out into the river from the batture in front of the levee between Poland and Mazant streets by the explosions of dynamite used by a contractor employed by the levee board to remove the old piling from the river. The plaintiff contends that it was stipulated in the contract that he might use the batture, and that by the loss of it he was compelled to haul the material a greater distance at an extra cost of 55 cents per cubic yard.

Col. S. F. Lewis, engineer for the levee board, advised the board's attorney that the claims approved by Mr. Douglas should not be paid, excepting the four bills approved by the executive committee, amounting to $2,385.86. The attorney was of the same opinion, and submitted the matter to the levee board, with the report of Mr. Douglas and with his (the attorney's) advice that only the four bills approved by the executive committee, amounting to $2,385.86, should be paid. By a resolution of the board the advice and recommendation of the attorney was approved and adopted.

The plaintiff sued for $22,224.53; that is, for the claims approved by the executive committee, amounting to $2,385.86, for those approved by Mr. Douglas, amounting to $13,788.67, and for bill No. 6, contract No. 2, rejected by Mr. Douglas, amounting to $6,050. Thereafter the defendant paid the amount of the four bills approved by the executive committee of the board, $2,385.86, less $250, being half of the fee of the expert, Douglas; and the plaintiff prosecuted his suit for the balance, $19,838.67.

Judgment was rendered in favor of the plaintiff for $14,379.98, with legal interest from judicial demand. The district judge

did not state in his reasons for judgment what claims were allowed or rejected; but, as the difference between the amount claimed by the plaintiff and the amount of the judgment is $5,458.69, and the sum of the two bills, contract No. 1, bill No. 5, $2,039.13, and contract No. 2, bill No. 9, $3,419.55, amounts to $5,458.68, it is assumed that the district judge rejected these two items, and that the judgment contains an error of one cent in the addition of the remaining items. The defendant has appealed, and, as the plaintiff has neither appealed nor answered the defendant's appeal, the claims referred to as contract No. 1, bill No. 5, $2,039.13, and contract No. 2, bill No. 9, $3,419.55, are eliminated from the case.

### Opinion.

[1] The defendant contends that the ruling of the executive committee was binding upon the parties to the contracts and is not subject to review by the courts, under the following stipulation in each contract, viz.:

"Should differences arise between the contractor and the engineer in charge, the matter shall be submitted to the executive committee of the board, whose decision shall be final and binding upon the parties."

The plaintiff contends that the foregoing clause refers only to disputes or differences as to matters over which the engineer is given authority within the terms of the contract, and particularly the following provisions, viz.:

"The work shall be done under the direction and supervision of the engineer designated by the board, whose directions shall be complied with, and of such local inspectors as may be appointed by the board of commissioners. He shall have the right to condemn all work not in accordance with the spirit or text of this agreement, or which shall not be in accordance with the dimensions, locations, and methods of construction prescribed by him or provided in these specifications."

Construing similar clauses in a contract, in the case of Shea v. Sewerage & Water Board, 124 La. 299, 50 South. 166, it was held that they meant merely that the engineer was to be the judge of the manner of doing the work, and had final authority only to decide whether the contractor complied with the specifications and to condemn his work if he did not comply.

[2] It is not legally possible to hold that the clause, "Should differences arise between the contractor and the engineer in charge, the matter shall be submitted to the executive committee of the board, whose decision shall be final and binding upon the parties," meant that the engineer could arbitrarily dispute any claim of the contractor, that the board of levee commissioners or its executive committee could arbitrarily maintain the engineer's contention, and that their ruling could not be questioned. That construction of the contract would make it depend upon a potestative condition, and would characterize it as a nudum pactum, because the fulfillment of the obligations of the board of levee commissioners would then depend upon the will of its own engineer and executive committee. Such a potestative condition, as defined in article 2024, R. C. C., would render the contract null, in the terms of article 2034, R. C. C.

Such clauses in a contract are valid and binding upon the parties in so far as they make the representative of one of the parties the sole and final arbiter of the matters to which his authority is limited in the terms of the contract. That is as far as the authorities cited by the learned counsel for the levee board go. They all qualify their opinion that such a clause in a contract is valid and binding with a proviso; e. g., unless legal cause for refusing to abide by the ruling of the arbiter is shown, or unless fraud or collusion or an arbitrary ruling, or a gross mistake implying bad faith on the part of the arbiter, is shown by the complainant. The questions whether the dispute is within the jurisdiction conferred upon the arbiter

by the terms of the agreement and whether his ruling was so arbitrary as to amount to fraud or bad faith are for the courts to decide.

The defendant's counsel relies upon the ruling in McNamara v. Board of Commissioners of the Tensas Basin Levee District, 44 La. Ann. 829, 11 South. 278, to the effect that the only relief afforded the contractor when he objected to a change in the extent or location of the levee, as directed by the engineer of the levee board, was by the terms of the contract an appeal to the state board of engineers. In that case, however, the complaint was as to a matter within the authority or jurisdiction conferred upon the engineer by the terms of the contract; and the tribunal that was made the final arbiter of the dispute in that case was not the executive committee of the contracting levee board, but the state board of engineers.

[3] The defendant's attorney also contends, though perhaps not so confidently, that by accepting the $2,385.86 paid by the levee board after the suit was filed the plaintiff waived all other demands. The receipt bears this reservation, signed by the plaintiff and by the former attorney for the defendant, viz.:

"This receipt is made and given without prejudice to the rights of either party to the above-mentioned suit, and it is agreed by the plaintiff that it shall have the same effect as if legal tender of the above-mentioned amounts had been deposited in the registry of the court."

The "above-mentioned suit" referred to the caption of the receipt, viz.:

"No. 91,581, Division A, Civil District Court. Reynolds & Company versus Board of Commissioners of the Orleans Levee District."

If the amount paid had been deposited into the registry of the court, it would not have defeated the plaintiff's right to proceed with his suit on the disputed claims. The purpose expressed in the receipt was to avoid the very consequence now claimed by the defendant; and we see no reason of law or equity for holding that they did not avoid it.

[4] Taking up the disputed claims in their proper order, the first is on contract No. 2, bill No. 5, for additional cost of hauling 6,000 cubic yards of earth a greater distance than was contemplated in the contract, caused by the alleged arbitrary withdrawal of permission to use the batture adjacent to the old levee.

[5] The batture in question was not directly in front of the old levee, or between it and the river, but extending beyond the end of the levee. The contract provided:

."A portion of the earth for this levee can be obtained from the old levee and adjacent battures."

The plaintiff construed the expression "adjacent battures" to include the batture extending beyond the end of the old levee as well as that directly in front of it. The meaning of "adjacent to" has not been restricted to *abutting, adjoining, contiguous to,* or *bordering upon;* it has been held to mean *lying close by, near to,* or *in the neighborhood* or *vicinity of.* See Corpus Juris, vol. 1, p. 1194 et seq. The engineer of the levee board gave that liberal construction to the term and agreed that the plaintiff might use the batture beyond the end of the levee. In consequence of this agreement, the plaintiff spent about $600 building a plank run for conveying the dirt to the new levee. There is no dispute that after the plaintiff began using the batture he was stopped by the defendant and was compelled to haul the earth a greater distance at an extra cost of $1,500. We agree with the district judge that this was not a matter on which the ruling of the executive committee of the defendant board was final and conclusive.

[6] The claim of $4,200 referred to as contract No. 2, bill No. 7, is for extra compensation for building the extension of the levee from one of the limits fixed in the contract;

that is, from the middle of Poland street to Kentucky street. The specifications annexed to the contract called for a levee "about 1,-000 feet in length, commencing near the lower side of Mazant street, and running down stream to the center of Poland street." There is a clause in the contract as follows, viz.:

"Should the executive committee deem any changes necessary in the extent or location of the levee, or in the grade line, dimensions, or quantity of work required, such change shall be made by the contractor at the same rate of compensation as hereinafter stipulated, provided such change shall not exceed 20 per cent. in excess or in diminution of the contract price."

The defendant contends that the executive committee had the right, under the clause quoted, to change the extent and location of the levee and increase its length and the quantity of work required, as it did, by ordering the plaintiff to continue the levee from the center of Poland street to Kentucky street, and that the contractor was bound to build the additional length of the levee at the same rate of compensation stipulated in the contract. The rate of compensation stipulated in the contract was 90 cents per cubic yard. The evidence shows that it was worth $1.15 per cubic yard to build the additional length, because the conditions regarding accessibility of material were less favorable to the contractor, especially after the defendant withdrew permission to use the batture below Poland street. The increase in the length of the levee required 16,800 cubic yards more earth, for which the plaintiff makes an extra charge of 25 cents per cubic yard. The evidence fully justifies the extra charge, if the plaintiff was not bound to build the additional length of levee at the rate of compensation stipulated in the contract. Whether he was or was not so bound depends upon whether the change in the length of the levee required by the executive committee came within the right to require any change in the extent or location of the levee or in the di-

mensions or quantity of work required at the same rate of compensation, not exceeding 20 per cent. in excess of the contract price. The change required by the executive committee was nothing more nor less than an increase in the extent in one of the dimensions of the levee and in the quantity of work required. But the cost exceeded 20 per cent. of the contract price. The total yardage paid for under contract No. 2 was 77,300 cubic yards. The contract originally required only 60,500 cubic yards; hence the increase in the length from the middle of Poland street to Kentucky street made the cost exceed the contract price by 27¾ per cent. The extension of the length of the levee from the center of Poland street down to Kentucky street was not provided for in the contract; and the plaintiff was not bound to do the work at the same rate of compensation stipulated in the contract for building the levee that was described in the contract. The defendant was not entitled to have 20 per cent. additional work done at the rate of compensation stipulated in the contract and 7¾ per cent. of it at its actual value, because the plaintiff was not bound to do the extra work, exceeding by more than 20 per cent. the original work, at any rate of compensation; and it is not to be presumed that the executive committee would have required him to extend the length only 20 per cent. at the rate of compensation stipulated in the contract. At any rate, the executive committee did not require him to increase the length (and consequently the cost) only 20 per cent., and that was the limit of their right to increase the work to be done. The plaintiff protested against building the levee from the center of Poland street to Kentucky street, and did the work under protest, with reservation of his right to demand the actual value of the work, and only to avoid having the defendant undertake it and charge the excess cost to him. Our conclusion is that the decision

of the executive committee as to this claim was not final or conclusive, and that the judgment allowing the claim is correct.

[7, 9] The claims designated as contract No. 3, bill No. 1, for $199.99, and contract No. 4, bill No. 1, for $2,430, are for the loss of earth deposited in place and lost by the sinking of the foundation. In our opinion, the sinking of the ground under the levee was an accident or casualty, for which the contractor assumed the risk, in the following provision in the contract, viz.:

"The contractor takes all risks from accidents, floods, and casualties of every kind which may occur before the completion and acceptance of the work, and shall sustain all damages and injury that may be caused thereby."

The sinking of the ground under the levee occurred before the completion or acceptance of the work, and the resulting loss must be borne by the plaintiff. The expert engineer to whom the claims were submitted approved these items on the ground that the caving of the foundation was a catastrophe, and not a casualty. Our understanding of the word "catastrophe" is that it means a notable disaster ; a more serious calamity than might ordinarily be understood from the term "casualty"; but the assumption of all risks from accidents and casualties of every kind was intended to include, and must be held to include, an accident, casualty, disaster, or calamity so serious and important that it might be termed a "catastrophe." Our conclusion is that these two claims should have been rejected.

[8] The claim designated as contract No. 2, bill. No. 6, for $6,050 for the loss of 11,000 cubic yards of material in the batture in front of the levee between Poland street and Mazant street by the explosion of dynamite used in removing piling, is resisted on the ground mainly that the damage was done by an independent contractor, for whose fault the defendant denies responsibility. The evidence sustains the allegations that the dynamite explosions caused the batture to sink ; that more than 11,000 cubic yards of material that was available under the terms of the contract was lost ; and that the plaintiff was compelled to transport that amount of dirt from a place near Audubon Park, at an extra cost of 55 cents per cubic yard. It is argued by the defendant's counsel that the levee board did not direct the contractor employed to remove the piling to use dynamite, and that the plaintiff did not complain to the contractor of his using dynamite instead of pulling out the piling. This is true ; but it is also true that the engineer of the levee board supervised and had authority to direct the manner of removing the piling, and that the plaintiff complained to the levee board while the blasting was going on. The contractor employed to remove the piling was not at fault for using dynamite so long as the engineer of the levee board permitted its use. The defendant was at fault for permitting another contractor to violate a right that had been granted to the plaintiff under his contract. The defendant acknowledged a degree of responsibility in this respect by paying for the time lost by the plaintiff's employés in getting out of the way of the blasts of dynamite. Our opinion is that the claim for loss of material by the destruction of the batture was a matter of which the decision of the executive committee of the levee board was not final or conclusive, and that the claim was properly allowed by the district court.

For the reasons assigned, it is ordered and decreed that the judgment appealed from be amended by reducing the amount from $14,379.98 to $11,849.99. As thus amended, the judgment is affirmed; the costs of the appeal to be borne by the appellee.