HENRY F. TURNER, Judge pro tem.
This litigation arose as the result of the sale of a piece of property on which a *820 house had been constructed and is a con-cursus proceeding provoked by the notary public who executed the sale and one mate-rialman. In accordance with the requirements of LSA-R.S. 13:4811-17, the notary deposited in the registry of the district .court for the Parish of Orleans the net ■proceeds from the sale of the property, to-wit, the sum of $16,732.98. The claimants to those funds are a mortgage holder .of a note bearing on the property and •other furnishers of material and labor used ■in the construction of the house.
After trial the district court rendered ¡judgment in favor of the claimant material-men and furnisher of labor, three in number, with preference and priority over the ¡mortgage holder. There was further judgment in favor of the mortgage holder and .the United States of America which had .asserted a tax lien against the mortgage holder, both of whom appealed. On joint motion, the appeal of the Government was dismissed.
The facts involved are rather lengthy and are as follows:
In 1954, John F. Cerise Co., Inc., hereinafter referred to as the owner or Cerise, purchased two contiguous tracts of land, being approximately 288 feet front on U. S. Highway 90, in the City of Ne-w Orleans, by a depth of approximately 3000 feet between parallel lines, which Cerise subdivided into 101 lots and designated it as the Cerise Subdivision. Following the completion and sale of 45 houses in the subdivision, it contracted with John F. Cerise Construction Company for the construction of an additional 55 houses on 55 separate lots in the subdivision. On 50 of the homes there was a written contract and bond; on an oral contract the contractor built five houses on Lots 51, 69, 70, 71 and 72. All of these five lots are in the Cerise Subdivision but are not contiguous and do not adjoin, but as shown on a plat of the subdivision are all in the Subdivision in the general vicinity of each other separated by 480 feet in one instance and slightly more than that in others.
Work commenced on the project for the development of the 55 houses by March 1956, and continued until April or May 1957, when the last house, located on Lot 51, was completed. After work was commenced on the project, and after 85 percent of the work to build the house on Lot 51 was completed, Cerise, on December 6, 1956, executed a mortgage bearing on this property to secure the payment of a note in the sum of $15,000, which note is held by Mrs. Albert Emke, the mortgage holder and one of the claimants in these proceedings. Before the work had been completed on Lot 51, Bernard Lumber Co., Inc., Allen B. Cambre Lumber & Supply Co., Inc., and Albert T. Carey filed liens against the property. The amounts involved as to the materialmen are not contested as to the balance due on the entire project.
After these liens were filed and after the house on Lot 51 was completed, a buyer was found who offered a price which was considered by all concerned to be a good price, and rather than lose the prospective purchaser and possibly have to sell for less following litigation of the claims, the lienholders and the mortgage holder entered into an agreement whereby they can-celled their liens and mortgage in order that the buyer could buy the property without buying a lawsuit. As agreed the proceeds were deposited in the registry of the court with the view of having a concursus proceeding to determine the respective rights of the claimants. Bernard filed an additional lien against Lot 51 alone for the material placed on said lot. Appellant has no quarrel with the allowance of this amount as against Lot 51. The lien claimants do not claim that the entire amount of material or labor upon which their claims were based was delivered to and performed on Lot 51 but on lots within the subdivision and that their claims amount to the balance due for labor and material throughout the subdivision.
*821 The Hens were filed under the provisions of LSA-R.S. 9:4816 which read as follows:
“Any person furnishing service or material or performing any labor for the contemporaneous or continuous construction or improvement by the same general contractor of two or more buildings or works, situated on adjacent lots or parcels of ground, owned by the same person, may file a single privilege upon all of the said buildings or works and upon the lands upon which they are situated, whether said constructions or improvements be made under one or several contracts, and the said privilege shall secure the payment in principal and interest of the entire amount due for all the said service, material, or labor, and the cost of recording the said privilege. Proof of the performance of labor on, or delivery of materials to, any of the said ¡buildings or works shall be sufficient to •establish performance of labor on, and delivery of materials to, all the said ¡buildings or works. When there is more than one contract for the said -contemporaneous or continuous constructions or improvements, the surety ■on any of the said contracts shall be liable for such proportion of the said .claims for material and labor as the •cost of the particular construction or •improvement for which the surety has • executed a bond bears to the total cost • of all of the said constructions or improvements.”
This petition was filed on October 1, 1958. Following a hearing judgment was rendered recognizing the materialmen’s and laborer’s claims as prayed for. This left a balance less than the amount of the mortgage holder’s claim and she, therefore, appealed from that judgment. A plea of prescription was filed, appellant arguing that the claimants, having substituted the deposit in the registry of the court for their liens, were obliged to assert their .claims within a one-year period provided for asserting liens. We find no merit in this plea for the reason that when the parties surrendered their liens, there was no lien remaining to claim and consequently no prescription to assert. They had given up their liens in an amicable agreement to have the court determine their respective rights. To hold otherwise would mean they were surrendering a valuable right without any consideration.
Appellant’s objection to the ma-terialmen’s lien is that the lots in question not being contiguous are therefore not adjacent. The main question to be decided in this case is the intent of the Legislature and the lien statute which, in our opinion, was clearly intended for subdivision and housing developments although as stated by counsel the words “subdivision” or “housing development” are not used in the body of the act. The words used in the act plainly and clearly intended to include a subdivision project and the intent of the act is obvious, that is, to permit a person developing a subdivision or multi-building project to buy material in quantities at quantity prices and one truck deliver such materials to the job site and distribute them to the various housing units under construction — in other words, to permit a person to streamline his operation in the interest of efficiency and economy and at the same time protect his suppliers of materials and labor for their materials and labor. We think the word “adjacent” as applied to lots in the act clearly contemplates a situation such as this and is not restricted to lots actually bounding each other. Of course, in a project of this type it is always to be considered that the building of streets and alleys is necessary. When you run a street through a subdivision, naturally the lots on either side of the street do not touch, being separated, of course, by the street. Still in our opinion they are adjacent within the contemplation of the terms of LSA-R.S. 9:4816.
Counsel for appellant have cited an old case of the Supreme Court decided in 1852, *822 Municipality No. Two, For Opening Eu-phrosine Street, 7 La.Ann. 72, which appears to hold otherwise. The difference in that case, however, is that in that case it was a question of assessing abutting property owners. for street improvements and of course inside lots far distant from the street would not he adjacent to the streets for the purpose of assessing abutting property owners. Counsel for appellant argue that to uphold the judgment of the district court would impose a tremendous burden on title examiners in future cases, but we do not agree with this in view of the fact that the plat in question was filed of record for anyone to see and it clearly showed that a subdivision or multiple housing unit was contemplated or in progress and there would be no difficulty in determining said facts.
Our Supreme Court in the case of Reynolds v. Board of Com’rs of Orleans Levee Dist., 139 La. 518, 71 So. 787, had occasion to pass uporf the meaning of the word “adjacent” and held “The meaning of ‘adjacent to’ has not been restricted to abutting, adjoining, contiguous to, or bordering upon; it has been held to mean lying close by, near to, or in the neighborhood or vicinity of. See Corpus Juris, vol. 1, p. 1194 et seq.” C.J.S., Vol. 1, p. 1465. There can be no question but that Lot 51 was part of the owner’s subdivision and was part of a continuous and contemporaneous building program and that the materialmen’s liens were properly recorded under the provisions of LSA-R.S. 9:4816, and that the judgment of the district court so holding was correct.
We now come to the lien filed by Carey, the bricklayer, for labor performed on the entire project of John F. Cerise & Co., Inc. Although Carey chose to file his lien against the one lot, Lot No. 51, we think he is nevertheless entitled to the provisions of LSA-R.S. 9:4816. Not to file against additional lots or property in the subdivision would be surrendering a right that he had. Giving up this additional security for his claim adversely affects him only. Apparently he realized that the amount involved was sufficient to satisfy his judgment out of the amount deposited and there was no necessity for entangling additional property. The stipulation filed in the case shows that all of the labor for the amount claimed by Carey went into the Cerise subdivision although only $637.50 went into Lot 51. The same reasoning would apply as to the other lien claimants, that is, since they filed their liens on a lesser number than the 100 lots involved in the project would not mean that they did not avail themselves of the provisions of LSA-R.S. 9:4816. No doubt some of the materials delivered and unpaid for went into some of the buildings other than the ones on the five lots included in the lien.
For the reasons assigned, it is our opinion that the judgment of the lower court is correct and is therefore affirmed.
Affirmed.