JANVIER, Judge. ;
' Plaintiff corporation is a retail lumber dealer doing business in New Orleans. Before the occurrences on which this suit is based, defendant, Emile E.' Gardette, owned three lots of ground numbered 1, 2 and 3, in the square bounded by Lane Avenue, Grant Street, Gentilly Highway, and a fourth unnamed street, in the Ninth Ward of the City of New Orleans.
Gardette sold lots 2 and 3 to Nicholas P. Wagner, a contractor who erected buildings on those two lots,' but Gardette retained the ownership,of lot No. 1.
In its original petition plaintiff corporation alleged that a1 building was being constructed by Wagner on lot No. 1 “at the request of and with the knowledge and consent of the defendant, Gardette,” and that it had sold certain lumber to Wagner to be used in the construction of that building, the total price thereof being $1,634.89, and it attached to its petition a statement showing the various sales, the first being made on May 21, 1949, and the last on June 9, 1949.
Plaintiff alleged that it had been necessary to file a lien against the property on which the building was being erected, and that the recordation had been effected on June 16, 1949, which was a few days after the last delivery of lumber, and that the lien had been reinscribed on June 12, 1950; that the cost of recording and reinscribing the liens had been $13, and plaintiff prayed for a judgment against Gardette for the sum of $1,647.89. Plaintiff did not pray in that petition for recognition of its lien.
To this petition defendant filed a plea of nonjoinder of a-necessary party. This plea was overruled, and the defendant then filed answer, admitting his ownership of the lot on which the building had been partially constructed, but denying that the building was -being constructed with his knowledge or consent. Defendant then assumed the position óf plaintiff in reconvention and alleged that he had not entered into any contract for the erection of a building on his property, and that, as soon as he discovered that such building was in the course of construction,- he immediately caused -the construction to be stopped. He then alleged that he had been damaged in the sum of $5,000 as a result of slander of title, based on the illegal recordation of the lien, and he prayed for a cancellation and annulment of the recordation and for judgment for $5,000 against plaintiff corporation as damages for slander of title.
Plaintiff then filed an amended petition, in which it alleged that defendant had full knowledge of the construction and had full knowledge of the fact that petitioner was furnishing lumber and materials therefor *425 and did not object to or interfere with the delivery of the lumber and materials, and that accordingly the defendant was “es-topped from denying personal knowledge, consent, and/or acquiescence of the delivery of such lumber and materials,” and the plaintiff then prayed for recognition of its lien.
To this amended petition in which plaintiff sought a recognition of its lien, defendant filed a plea of prescription of one year, contending that, by reason of the fact that more than a year had elapsed after the reinscription of the lien on June 12, 1950, without an additional reinscription, the lien, if it ever had existed, had prescribed. LSA-R.S. 9:4812, Private Works.
After a trial on the merits there was judgment in favor of defendant dismissing plaintiff’s suit and declaring the inscription of the lien to be null and void. From this judgment plaintiff appealed devolutively, and following this devolutive appeal, Gar-dette, by rule nisi, called upon the Recorder of Mortgages for the Parish of Orleans to show cause why he should not erase and cancel the inscription from the records of his office.
On a trial of this rule the inscriptions were ordered erased. Consequently, the sole issue before us on appeal is whether or not plaintiff is entitled to a money judgment against Gardette for the price of the lumber sold to Wagner and used in the construction of the building bn the property of Gardette.
The record shows that Wagner was a general contractor, and that after he completed the construction of the buildings on lots Nos. 2 and 3 which he had bought from Gardette, he commenced the construction of another building on lot No. 1 which still remained the property of Gardette. This construction was commenced during the latter part of May, 1949, and on or about [June 8, 1949, Wagner disappeared, leaving unpaid the bills for the lumber and also other accounts for labor and apparently for other materials and supplies. It was then that plaintiff corporation conceived the idea that, since the building was being erected on land of Gardette, he must have known of the construction and consequently must have agreed to its erection, and that therefore it must be assumed that there was a contract between Gardette and Wagner, and that since the contract, if there was one, was not recorded, plaintiff was entitled to recover from Gardette the price of the lumber sold, and was also entitled to a lien on the property on which the building was being erected. In this contention the plaintiff relied upomthe'provisions of LSA-R.S. 9:4812, already referred to.
The plaintiff admits that the sales of lumber were made to Wagner, and Farris, the President of the plaintiff corporation, says that he did not know the defendant, Gar-dette, until June 9th or 10th, which was after Wagner had disappeared. He says that he did not know who owned the lot on which the building was being constructed. It is true the Farris said that after it was discovered that Wagner had disappeared, he had a conference with Gardette and that Gardette asked him “to go ahead and send the lumber,” and said that if it was not paid for, he, Gardette, would pay for it. Even if that is true, that conversation did not take place until June 8th or 9th, and, according to the statement on which the suit is based, which shows total sales of $1,634.89, the only sale on Juñe 8th amounted to $9.88, and the only sale' on June 9th amounted to $6.16; all the balance having been sold directly to Wagner prior to June 8th and before the alleged conversation in which Gardette said that he would be responsible if Farris would “go aheád and send the lumber.”
It must be conceded that it is a little hard to understand how the work could have been conducted for more than two weeks on property of Gardette without his having acquired knowledge thereof. And yet the record contains evidence which, if true, indicates that that is actually what occurred. There is evidence to the effect that Gardette was seen on the property several times while work was going on, and there is, on the other hand, evidence to the effect that he had not been there at all during that time. There is no affirmative proof that there was a contract between Wagner and *426 Gardette for the construction of the building, and in the absence of such a contract, Gardette could not be -held liable, unless it be on the theory that he must have known of the construction of the building and therefore must have actually had a contract with Wagner to that end.
Were it not for the finding of our brother below, we might find ourselves unable to accept as true Gardette’s statement that he knew nothing about the work, but on the factual disputes found in the record, we do not think it proper to say that the finding of the District Court was manifestly erroneous.
One of the witnesses who testified in favor of the plaintiff, John Edward Blair, said that he was a .subcontractor who had undertaken to do the carpentry work on the building, having been employed for this purpose by Wagner. He says that he saw Gardette on the premises “several” times. He says that he is sure that he saw Gardette because Gardette, while on the premises, attempted to sell him a used truck. It may be that Blair is telling the truth, but his testimony is attacked on the ground that he himself was not paid for the labor on the building and that therefore he has an interest in having -it appear that Gardette is liable for material and labor used in the building. He admitted that he had seen Farris, the President of the plaintiff company, and Gardette together only once.
Another witness who testified on behalf of plaintiff was Dave Maggard, who said that he had seen Gardette at the building during the course of construction at least four or five times. He, too, said that Gar-dette, while on the premises, had attempted to sell him a car, and he is therefore sure that Gardette had been on the property while the work was going on. His testimony is attacked on the ground that he was a close friend of Blair; that he lived in Pascagoula, and had voluntarily come all the way to New Orleans to help Blair secure his payment for the carpentry work.
A third witness, who testified on behalf of plaintiff to the effect that Gardette had been seen on the premises during the course of the work, was C. L. Bunts. But the testimony of Bunts is attacked on the ground that he was willing to sell his testimony to whichever side would pay him the most for it.
Mr. and Mrs. Gardette both testified that Bunts had come to talk to them and had told them that he had been offered $100 to testify for Farris, and he wanted them to make him a better offer.
On behalf of the defendant, James Forster was asked whether he had been there most of the time during which the work on those two houses was going on, and he answered, “yes.” He was asked whether he would have been in position to have seen Gardette if he had come out there, and he answered: “Certainly, certainly.”
Henry Kepper testified that he lived across the street from the lot on which this house was being erected; that he did not work during the month of May and was home practically all during that time, and that he had “never” seen Gardette on the premises.
Gardette himself says that he knew nothing about the construction until June 8th, and that then he immediately went out and stopped the work.
It-is most unfortunate for the plaintiff that it furnished lumber to Wagner and that Wagner disappeared without paying it, but it would not be proper to hold Gar-dette liable for the price of that lumber unless Gardette authorized the construction, or knew that the lumber was being bought for his account and did not prevent this being done.
As we have already said, it is difficult to understand how the work could have been going on without Gardette knowing of it, but the construction was in a part of the City, remote from Gardette’s residence or place of business, and it is quite possible that Gardett.e did not know of it. At any rate,. since the trial court so found, and since there is evidence, which, if true, would justify this conclusion, we feel that the result reached by the trial judge.should be held to be not manifestly erroneous.
• Accordingly, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.