GLADNEY, Judge.
Meadowview Park Subdivision, Inc., whose president and manager is Arthur Ray Teague, brought this and three related suits to compel the Bossier Parish Clerk of Court, made a defendant herein, to erase and cancel labor liens filed by the defendant workmen affecting Lots 26, 28, 29, 30, 31 and 32 of the re-plat of Swan Lake Subdivision, Unit No. 2, as per map recorded in Conveyance Volume 275 at page 331 of the records of Bossier Parish. Additionally, plaintiff prays for an award of damages and attorney’s fees against defendant lien claimant. In due course issue was joined by the defendant, Donald E. Morrison, who filed an answer together with his claim in reconvention for the amount of, and costs of filing his lien, $310. Subsequent to the filing of plaintiff’s petition an agreement by the parties was reached whereby a bond was supplied by plaintiff in order to permit erasure of the lien. Trial of the case resulted in judgment rejecting in toto plaintiff’s claim for damages and defendant’s reconventional demands, but ordering the erasure and cancellation of the lien, thereby dispensing with liability under the bond. The defendant has appealed.
A stipulation of facts was agreed upon by the parties and the judgment of the trial court was predicated upon the facts so presented. These facts disclose: that Arthur Ray Teague testified that after several interviews with one Ed Gordon, the latter proposed to purchase the above described lots; that Gordon selected the lots and marked the front of each with a small sign bearing the word “Sold”; that Gordon was told by Teague the price of the lots could not be fixed until commitments from the FHA had been received, but the prospective purchaser would be given ninety days after such commitments to pay for the lots, and that such payments would have to be made before any construction' could commence; that Gordon discussed the financing of the proposed purchases with Teague several times and informed him that he, Gordon, had some money coming from San Francisco; that Gordon placed signs bearing the name “Ed Gordon Construction Company” on the property and commenced construction work on November 16, 1959; that such construction work was continuous until December 2, 1959; that during the period of construction Teague was engaged in a construction project on the other side of the street with a builder by the name of Corley; that Teague maintained a small real estate sales office about two hundred feet from the' construction work instituted by Gordon; and that on one or more occasions while said construction work was in progress, Teague came on the ground and looked at blueprints of the contemplated structure. Teague admitted he. saw men working on the property in question on an average of once a day for the entire period. He testified, however, that on or about November 26, 1959, and again on December 2, 1959, he instructed Gordon to stop work.
J. N. Birdwell, a vice-president of plaintiff corporation, testified he had no actual knowledge of the construction work which was performed on the lots in question, and he did not visit the site of the construction work during that period. He testified to a discussion with Gordon relative to the financing of construction on the lots, and he related that the latter assured him he had made financial arrangements for the work. Birdwell testified that upon learning of the work in progress on said lots, he and Teague notified Gordon to stop operations. The testimony of the workmen discloses they were employed by Gordon under the supervision of his foreman, Lester L. Hul-ion, and that they were ignorant of the fact that Gordon was not the owner of the property. It was testified that Teague passed the Gordon project not less than once a day during the entire time the construction was in progress. After working *778 for two weeks, from November 16, 1959 to "December 2, 1959, the workmen quit because they were not paid.
Hulion testified he worked during the two-week period but received no wages so he quit; that the labor liens filed by the defendant and other workmen involved in related suits were correct; that he saw Teague when the latter walked around the job and on two occasions looked at blueprints ; that the work was never interrupted and various sub-contractors delivered many loads of material to the job.
On December 2nd Gordon disappeared without paying any of his employees and his whereabouts since that time has not been known.
The defendant filed his labor lien under the provisions of LSA-R.S. 9:4801, as amended by Act No. 291 of 1952, Section 1, Act No. 477 of 1954, Section 1, Act No. 60 of 1960, Section 1, Sub-section A of Section 4801 accords to workmen a privilege upon the land and improvements for the payment of labor performed thereon and for the cost of recording such privilege, provided that such work was performed “with the consent or at the request of the owner thereof.”
It is the owner’s contention that defendant’s work was not performed with its consent or at its request. The defendant contends, however, that Teague had full knowledge of the work being performed on plaintiff’s property, and that such knowledge constitutes tacit consent. The trial court appeared to rely on the case of Berg v. Schneider, La.App., 2d Cir., 1943, 12 So.2d 501, and counsel for appellee has referred us to Sirone v. Distefano, La.App., 1st Cir. 1953, 67 So.2d 150. In this case there appears a discussion of Harding v. Wattigney, La.App.Orleans, 1952, 62 So.2d 190. These decisions were instances of lessors’ knowledge and consent, and lessors are affected by special statutory provisions. LSA-R.S. 9:4811; LSA-C.C. Art. 3294. We, therefore, do not consider these citations apposite. In Farris Lumber & Supply Company, Inc. v. Gardette, La.App.Orleans, 1953, 65 So.2d 424, a decision of the Orleans Court of Appeal, plaintiff corporation brought an action for the recognition of a lien for lumber sold and used in the construction of a building on a lot owned by the defendant rather than'by one Wagner, the constructor of the building who disappeared without paying for the lumber. The defendant filed a plea in reconvention claiming damages, as did the plaintiff in this case. The trial court held the evidence justified a judgment for the defendant owner on the ground that he did not know the building was being constructed, had no authority over the construction, and did not know the lumber was being bought. Judge Janvier, the organ of the court, approved the decision of the trial court but apparently with considerable reservation. He remarked it was difficult to understand how the work could have been conducted for more than two weeks upon defendant’s property without his having acquired knowledge thereof, and stated:
“And yet the record contains evidence which, if true, indicates that that is actually what occurred. There is evidence to the effect that Gardette was seen on the property several times while work was going on, and there is, on the other hand, evidence to the effect that he had not been there at all during that time. There is no affirmative proof that there was a contract between Wagner and Gardette for the construction of the building, and in the absence of such a contract, Gardette would not be held liable, unless it be on the theory that he must have known of the construction of the building and therefore must have actually had a contract with Wagner to that end.
“Were it not for the finding of our brother below, we might find ourselves unable to accept as true Gardette’s statement that he knew nothing about the work, but on the factual disputes found in the record, we do not think it proper to say that the finding of the District Court was manifestly erroneous.” Id., at pages 425, 426.
*779 It is our understanding Teague admitted he knew the work was progressing on his property every day for a period of two weeks. He relies for defense, however, on first, his statement that he instructed Gordon not to build on the property until the lots were paid for; second, that he told Gordon to cease work on November 16th, the day on which the work started, and third, that he again requested Gordon to cease work on December 2nd, which was the end of the second week of work, and the day when Gordon disappeared without paying any of his bills. Teague does not deny that he had daily knowledge of the progress of the work. Photographs taken show the outside plumbing and the slab foundation work was substantially completed at the end of the second week. Under these circumstances we do not see how we can hold that Teague in good faith actually sought to prevent Gordon from continuing the work. It is clear, we think, that he allowed Gordon to continue his operation in the hope or belief that Gordan would secure money from some source. The defense tendered is insufficient to relieve plaintiff of liability under the statute.
The plaintiff and defendant are victims of the fraud of Gordon. As we appreciate the evidence, the workmen were unaware that Gordon did not own the property upon which the labor was performed. On the other hand, Teague did, in fact, know this. Under such circumstances it appears appropriate to apply the rule that as between two innocent parties, one of whom must suffer loss, he that could more easily have protected himself should be called upon to bear the loss. Louisiana Lumber Supply Company, Inc. v. Reeves, La.App., 1st Cir. 1951, 55 So.2d 64. Accordingly, we find the statute imposes liability for defendant’s claim and the judgment under review will have to be reversed.
It is therefore, ordered, adjudged and decreed that the judgment from which appealed be and the same is annulled, set aside, and reversed, and plaintiff’s demands are rejected, and it is further ordered, adjudged and decreed that there be judgment in favor of Donald E. Morrison, plaintiff in -recon-vention, and against Meadowview Dark Subdivision, Inc. in the full sum of $310 with legal interest thereon from December 2, 1959, until paid, and reserving unto the said Morrison his right to enforce the judgment herein against the bond filed in this cause, and further reserving unto the said Morrison any rights he may have against Edward Gordon. Plaintiff, appellee, is taxed with all costs of this suit, including cost of this appeal.