GUIDRY, Judge.
This suit on open account was instituted by plaintiff to recover money allegedly due it for making certain repairs on. a tractor. Defendants are Louis J. Daigre, d/b/a Ri-golette Ranch and A. J. Vangilder. The trial court rendered judgment in favor of the plaintiff and against both defendants, in solido, in the amount of $1,729.34, plus legal interest from June 6,1975, the date of judicial demand. Both defendants appeal. Plaintiff answered the appeals praying that the trial court judgment be modified such that the' principal amount will bear legal interest from August 1, 1974 until paid.
It was stipulated at the time of trial that plaintiff did perform the repair work on the tractor and that the amount due for the work is as set forth on the invoice copy, identified as P-1, in the amount of $1,729.34. Each defendant denies liability and contends that the other is fully responsible to plaintiff for the repair work performed.
The facts show that the tractor in question, which was a small industrial tractor with a front end loader, was owned by the defendant Louis J. Daigre. This tractor, along with other farm equipment Daigre owned, and a 550 acre parcel of land also owned by Daigre, were leased to defendant, A. J. Vangilder. The pertinent lease provisions read as follows:
“2. Daigre will furnish the land and all of the mechanical equipment that he presently owns which is located on the farm as needed for farm purposes.
3. Van Gilder will furnish all other necessary mechanical equipment and all other costs for successfully producing a crop on the above land with the exception of fertilizer and/or lime if required which costs will be born on a share and share-alike basis. Van Gilder (sic) will be totally responsible for all repairs and maintenance on all of Daigre’s equipment that he uses.”
The lease was for the calendar years 1972, 1973 and 1974.
We here note that since neither of the defendants filed third party demands against the other we are without authority to consider any dispute between them as to the ultimate responsibility for the amount due plaintiff under the quoted lease provisions.
The testimony of Charles Breland, the farm equipment service manager for plaintiff, indicates that the tractor in question was brought in for repairs by Vangilder sometime around the middle of June, 1974. At this time a job ticket was made out in Vangilder’s name. Breland stated that Vangilder brought the tractor in for minor repairs, including service for an oil leak. It was admitted by Breland that Vangilder contemplated repairs to the top transmission gasket which would have cost in the neighborhood of $100.00. Subsequently, upon disassembly of the tractor, Breland found the transmission and differential housing was cracked and that the repair would require extensive work. He also discovered there was some pinion gears broken on the rear end of the tractor. Breland *1299 testified that he believed he reported these findings to Vangilder before undertaking this major repair work. He could not, however, recall what Vangilder said in response, nor could he recall exactly who authorized the increased amount of work on the tractor. Breland admitted that he could not give a clear answer in regards to any further contact he had with Vangilder after the latter initially brought the tractor into the shop for repair.
Breland testified that he proceeded to do the additional work on the tractor. The repair work took some two months to complete, the reasons for the long delay being the unavailability of needed parts. Breland stated that on a number of occasions Daigre came into the shop asking why the tractor repairs had not been completed. Breland, who had previously worked on the tractor, knew it belonged to Daigre.
Charles Payne, plaintiff’s vice-president and general manager, testified he spoke with A. J. Vangilder when he first brought the tractor in for repair. Payne admitted that at this time Vangilder contemplated minor repairs to the tractor and only authorized such minor repairs as he thought were needed. Payne stated that it was not until after the more complicated and expensive work was complete did he again have contact with Vangilder. Following completion of the repair work Payne forwarded plaintiff’s bill, dated August 8,1974, to Vangilder. A. J. Vangilder, upon receipt of the bill, called Payne and told him to send the bill to Louis Daigre d/b/a Rigolette Ranch.
Payne testified that Vangilder subsequent to his bringing the tractor into the shop may have come back to check on the progress of the repair. Payne positively testified that Daigre came by three or four times wanting to know if the tractor was complete so that he could get it back out on the job. Payne had several conversations with Daigre concerning the tractor, and although Daigre did not say he would be responsible for the repair, he did tell Payne to get the parts and fix it. When asked whether these conversations with Daigre included the fact that the work would be more expensive than originally anticipated, Payne responded he was quite sure that both Daigre and Vangilder were aware the work to be performed on the transmission housing would be more expensive.
Louis Daigre testified he was the owner of the tractor in question and that this same tractor constituted part of the farm equipment which he leased to Vangilder. He stated that it was upon his repeated insistence that Vangilder took the tractor in for repair. Daigre admitted he had free use of the tractor as long as it did not interfere with Vangilder’s farm operation. The testimony of Daigre reflects that he used the tractor extensively, for such jobs as setting culverts, bush hogging, and building fences. He also stated that he made personal use of the tractor at his residence and camp on several occasions. Jimmy Moore, the principal operator of the tractor was employed by Daigre. Finally Daigre testified that he had frequently checked on the tractor at plaintiff’s to see when it would be finished.
The testimony of Steve Neal, a former employee of Vangilder, reveals that just before the tractor was brought in for repair it was being used by Daigre and Jimmy Moore to build fences. Neal testified that at this time he was temporarily employed by Daigre to work on the fences. He later returned to the employ of Vangilder.
A. J. Vangilder admitted that he told Daigre he would have the minor oil leak in the tractor repaired. Vangilder stated that Daigre wanted the tractor fixed so he could use it to fence in a new tract of land he had just bought. Thinking that the tractor had only a gasket leak, Vangilder stated that he delivered the machine to plaintiff with the needed parts, which included a gasket and clutch, along with a throwout bearing. He stated that after the initial delivery of the tractor no one at plaintiff’s ever had any discussions with him concerning the extent of the repairs to the tractor. It was not until August 8, 1974, when Vangilder received plaintiff’s bill was he aware of the amount of work that had been done. Van-gilder stated that after he brought the trac *1300 tor in he never personally went back to plaintiff’s shop to check on the tractor. He added that in his farming operation he seldom used the tractor.
The trial judge in his written reasons for judgment specifically found that the evidence did not establish that Vangilder authorized the major repairs. However, the trial judge found there was a preponderance of the evidence to the effect that Vangilder was made aware that the repairs were necessary and that he had checked on these repairs. Accordingly the trial judge concluded that Vangilder impliedly agreed to the major repairs and was liable therefor.
Also the trial judge found no evidence that Daigre agreed to be liable for the repairs, although he was aware that the repairs were being made and checked on their progress on several occasions. The trial judge was unable to find an implied contractual relationship between Daigre and plaintiff. The trial judge did determine however, that Daigre as owner of the tractor benefited from its repair, and accordingly found him liable to plaintiff under quantum meruit. Both defendants were cast in judgment in solido.
We are unable to reconcile the trial court’s conclusions. To summarize, the trial court finds both defendants had not authorized the major repair work, although both were aware that the repair work was being performed and that each checked on the progress of the work. This notwithstanding the trial court finds defendant Vangilder, had impliedly agreed to the major repairs. Yet, Daigre, acknowledged by all parties to have been the owner of the tractor, was found by the trial court not to have impliedly contracted with plaintiff for the work performed.
After reviewing all the evidence in this matter we agree with the trial court’s finding that neither of the defendants authorized the major repair work performed on the tractor. Further we are of the opinion the evidence shows that neither of the defendants, either expressly or impliedly agreed to be liable for the major repair work, although quite obviously both defendants were aware that plaintiff was doing some repair work on the tractor. We determine that the trial court’s finding to the contrary, i. e., that Vangilder had impliedly contracted with plaintiff for the major repair work, is manifestly erroneous. We are convinced that there was never any full understanding between plaintiff and defendants as to the extent of the repair work to be performed and the responsibility therefor. Accordingly, we find that no contract existed between the plaintiff and either one of the defendants for the major repair work performed.
We here note that there is no question but that the defendant Vangilder did contract with plaintiff for the minor repair work performed. We find Vangilder liable to the plaintiff only to that extent. The minor repair work was estimated to have cost $100.00.
Finally, we agree with the trial judge’s determination that a quasi-contractual relationship was created between plaintiff and the tractor’s owner, defendant Louis Daigre. Louis Daigre, on several occasions informed plaintiff that he needed and wanted his tractor repaired in order to get it back on the job, although, as aforesaid, he did not specifically agree to be bound for this major repair work. Plaintiff carried out his wishes. To the extent that the major repair work on the tractor was performed as a result of Louis Daigre’s actions, Daigre has been enriched and plaintiff has been impoverished. Additionally, we find that since no contract existed between plaintiff and defendants, and no other remedy at law, either against Daigre or a third person existed for plaintiff, the requirements for granting recovery under quantum meruit have been met. LSA-R. C.C. Articles 1963-1965, 2292-2294; Patin v. Jumonville, 336 So.2d 259 (La.App. 1st Cir. 1976) writs refused November 19,1976.[1]
*1301 Plaintiff has answered the defendants’ appeal, praying that it be awarded legal interest from August 1, 1974, the date of the open account. Our review of the record reveals no special arrangements were made between the parties for payment of legal interest from the date of the account. Accordingly, as concerns A. J. Vangilder he is liable to plaintiff for legal interest only from the date of judicial demand. Mack Trucks, Inc. v. Capitano, 204 So.2d 710 (La.App. 4th Cir. 1967). As concerns Louis Daigre, it is well settled in our jurisprudence that a debt owed under quantum meruit does not become due until the amount is ascertained, i. e., the date of the final judgment. Brummett v. Hamel’s Dairy, Inc., 324 So.2d 502 (La.App. 2nd Cir. 1975). We amend the judgment of the trial court insofar as it casts Louis Daigre for legal interest from the date of judicial demand to provide that he now be cast for legal interest only from the date of the final judgment in this matter.
For the above and foregoing reasons the judgment appealed from is amended and recast as follows:
It is ordered, adjudged and decreed that there be judgment in favor of the plaintiff, Scott Truck and Tractor Company of Alexandria, Louisiana, Inc., and against the defendant A. J. Vangilder in the amount of $100.00, plus legal interest from the date of judicial demand until paid.
It is further ordered, adjudged and decreed that there be judgment in favor of the plaintiff, Scott Truck and Tractor Company of Alexandria, Louisiana, Inc., and against the defendant Louis Daigre, in the amount of $1,629.34, plus legal interest from the date of final judgment until paid.
All costs of these proceedings at the trial court and on appeal are to be borne equally by each of the defendants-appellants.
AMENDED AND AFFIRMED AS AMENDED.

. In regards to the above findings we draw no conclusions as to Vangilder’s liability to Louis Daigre for these repairs under their contract of lease, as that issue is not before us.