396 So.2d 480 (1981)
H. A. H. VANDERVOORT, Sr.
v.
Charles A. LEVY, Jr.
No. 11728.
Court of Appeal of Louisiana, Fourth Circuit.
March 10, 1981.
*481 LaBorde & Brooks, Gerald Thos. La-Borde, New Orleans, for plaintiff-appellee.
Eric Oliver Person, New Orleans, for defendant-appellant.
Jefferson, Bryan & Gray, Trevor G. Bryan, New Orleans, for defendant-appellee.
Before GULOTTA, CHEHARDY and KLIEBERT, JJ.
*482 GULOTTA, Judge.
These three consolidated suits arose out of the renovation of a residence. In the first-filed matter,[1] H. A. H. Vandervoort, the architect, seeks professional fees from the homeowner, Charles A. Levy, Jr. The owner reconvened for costs of decorations and renovation caused by the architect's defective performance, and for pain and suffering, mental anguish and humiliation resulting from the filing of a lien against the residence by the contractor, Andrew P. Allain, d/b/a Allain Construction Co., for unpaid services. In the second suit,[2] claim is made by the owner against the architect for damages based on allegations similar to those made in reconvention in the first-filed suit. Thereafter, the general contractor filed a third suit against the owner and the architect to enforce a privilege against the residence for unpaid labor and materials.[3] The owner reconvened against the contractor; and both the owner and the architect third-partied each other.
After consolidation, the matter was referred to a commissioner and judgment was rendered, in accordance with the Commissioner's report, in favor of the contractor and against the owner for $7,167.51. This amount represents the extra work performed by the contractor on the renovations. All other main and incidental demands were dismissed.
On appeal, the homeowner contends the trial judge erred in holding him liable to the contractor since there was no privity of contract between them. He further argues if any amount is owed to the contractor it is the architect's liability since the architect employed the contractor, supervised him during the course of the work, and received a profit based on the contractor's work. Finally, the homeowner contends extra work was performed without his knowledge or consent and this unauthorized work is the responsibility of the architect or contractor. In answer to the appeal, the contractor claimed that the judgment, though correct as to liability, should be increased to $12,744.51. The architect has neither appealed nor answered the appeal.

BACKGROUND
In 1972, Mr. and Mrs. Charles A. Levy, Jr. contacted the architect, Vandervoort, for the purpose of making improvements on their home. Initially contemplated by the homeowners were soundproofing and carpet installation. Vandervoort submitted a bid of $7,000.00, but after discussions with the Levys the scope of the renovation broadened considerably to include new furniture and extensive interior and exterior renovation at a proposed cost of approximately $31,000.00. Vandervoort and the Levys held extensive discussions, but no written contract was entered into between them.
Vandervoort prepared a list of specifications dated September 18, 1972, which set forth the scope of the work to be performed.[4] Thereafter the architect contacted Andrew P. Allain and obtained a bid from him of $8,480.00 as the cost of the contracting work. According to the testimony of Allain's supervisor on the Levy job, the $8,480.00 figure was not a fixed price for the contracting work but was a "budget" figure assigned to him. In an October 27, 1972 letter from Vandervoort to the Levys in which the proposed work is itemized at a total figure of $31,192.55,[5] however, *483 the $8,480.00 figure is listed as an "upset" price of the contractor.
Although it is not clear from the record, it appears that Allain began the renovation on the Levy residence sometime in November, 1972. With the exception of the first month of construction, Vandervoort apparently was at the job site at least twice a week at a minimum during the course of the project.
Levy testified that he advanced $8,000.00 to Vandervoort but had no written document or plans. Sometime between October 20 and December 15, 1972 Levy received the plans and specifications, but did not read them at that time because of his concern for his wife's health. Work continued on the project, however, and Levy made periodic payments to Vandervoort as requested.
In the course of the renovation, Allain's crew and sub-contractors hired by Allain performed, without written change orders, certain "extra" work not included in the Vandervoort specifications. According to Allain's supervisor, all the extra work was authorized orally by Vandervoort. Vandervoort stated that certain extras had been approved by the Levys or had been done by Allain on his own initiative. Levy, on the other hand, testified that with the exception of some minor items, he did not authorize any extra work.
While the work continued in the latter part of February, 1973, the Levys took a vacation out of the country. Upon their return, the relationship among the parties deteriorated. At that time the Levys had paid out $29,000.00 but were unsatisfied with the work performed and concerned about the added expenses. Vandervoort thereupon audited the invoices submitted by Allain for payment and prepared an itemization of various changes, additions and substitutions to the specification document of September 18, 1972.
According to the Vandervoort audit, Allain invoiced a total of $23,955.20 for labor and material through March 1, 1973. Vandervoort determined that the correct figure for work performed by Allain was $19,572.87. Since Allain had already been paid $12,000.00, a balance of $7,572.87 was still owed according to Vandervoort.[6]
The Levys refused to make any further payments and work was terminated. Levy testified, however, that he later obtained a new contractor and interior decorator who started on the job in September, 1973 and finished it to his satisfaction on December 21, 1973 at a total cost of $30,900.00 for the new work. This litigation followed.
The Commissioner's report adopted by the trial judge, states, in pertinent part:
"The Court finds that no contract of any type existed between the owner and the architect which would guarantee an upset price to the owner....
Allain kept time records for his employees and material records for materials used. Some of the work ... was encompassed within the original bid submitted by Allain to Vandervoort of $8,480.00. *484 Other work was performed as extras either at the request of the owner, his wife, the architect, or was performed by Allain himself.
The architect went over the invoices from Allain and established that there was a variance between the amounts charged by Allain, the amount contractually agreed to by Allain, and the extra work performed by Allain and that work which Mrs. Levy directly ordered from Allain's employees.
The amount ... due and owing is $7,572.87 and the Court should recognize that a lien and privilege exists for such amount, subject to further credits outlined below.
While there exists controversy as to who exactly authorized such work, there is no doubt in the Court's mind that the work was indeed performed and that its performance was adequate.
As the case was presented some of the items charged as extras were found by the Court to be in the original contracted price and consequently further credits of the following amounts should be imposed.

Drawers and hardware in
master bedroom and bath $163.79
Drawers in hall locker 18.71
Hardware and hamperBath
No. 2 62.86
Gypsum board finish 161.00

The final amount found to be due and owing after consideration of all factors is $7,167.51.
The owners are responsible to Mr. Allain for this amount of money. Despite the contractural posture of the owner and Allain, it would be unjust to allow the owner to reap the benefits of the work and not pay for such. The law in regard to writing, bonding and recording of contracts was totally disregarded by all parties. This disregard gave rise to the conflicts which subsequently ensued between the parties."
We adopt as our own the above statements. Upon review of the record and the exhibits, we conclude that the trial court properly placed liability for extra work on the Levys on a theory of unjust enrichment and we find no error in the amount awarded.

LIABILITY
The trial judge properly found the Levys liable for extra work performed by Allain outside of that contemplated by the original specifications and encompassed in Allain's original bid of $8,480.00. As noted by the Commissioner, the Levys received a benefit in the form of this extra work and it would be unjust to allow them to retain the benefit without compensating Allain for it.
The requirements for recovery under the theory of unjust enrichment are that there be: 1) an enrichment, 2) an impoverishment, 3) a connection between the enrichment and the impoverishment, 4) an absence of "justification" or "cause" for the enrichment and the impoverishment, and 5) the unavailability to plaintiff of any other remedy at law. LSA-C.C. arts. 21, 1965, 2292 et seq., Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1968); Capitano v. Huber, Hunt & Nichols, Inc., 359 So.2d 308 (La.App. 4th Cir. 1978).
It is clear that these five requisites have been met in our case. The Levys have benefited from that extra work without paying for it and, therefore, are enriched. Conversely, Allain performed extra labor and furnished extra materials for which he has not received compensation. To that extent he has been impoverished. A connection between the enrichment and the impoverishment clearly exists. Furthermore, since Vandervoort hired Allain to perform the work there is no contractual relationship between Allain and the Levys. Accordingly, there is an absence of "justification" or "cause" for the enrichment and Allain has no other legal remedy to recover the cost of the extra work. Allain has established entitlement under the actio de in rem verso. See Scott Truck & Tractor Co. of Alexandria v. Daigre, 346 So.2d 1297 (La.App.3rd Cir. 1977).
In concluding that the trial court properly cast Levy in judgment under a theory of unjust enrichment, we reject Levys' contention *485 that lack of privity of contract between them and Allain bars his recovery. As noted previously, the absence of a contract is one of the prerequisites to recovery in unjust enrichment. Rather than serving to preclude Allain's recovery, the lack of privity is an essential element of the actio de in rem verso.
With the exceptions noted hereinafter, the extra work performed by Allain is compensable. Levy, Vandervoort and Allain's foreman testified in detail concerning each of the "extras" itemized by the architect. The extras are in conformity with the renovation work originally envisioned by the Levys and we cannot say that Allain made any drastic substitutions of material or implemented extreme changes. Rather, it appears that the extra work arose out of necessity as the work progressed. For example, the doors in certain rooms had to be "undercut" or adjusted to accommodate newly installed carpeting. Certain window sills were discovered to be rotten and had to be replaced. Likewise, leaking in a storage room required the pouring of new concrete.
Although it is true that a dispute existed as to who authorized the extra work, recovery in favor of Allain against Levy under an unjust enrichment theory is consistent with LSA-C.C. arts. 2763 and 2764, dealing with building contracts.[7] Whereas Article 2763 provides that a workman undertaking a job according to an agreed plan cannot claim an increase in price unless he can prove that such changes have been made in compliance with the owner's wishes, Article 2764 provides that there is an exception where the alteration or increase was necessary and unforeseen.[8] From our examination of the record, we cannot conclude that the changes implemented in the Levy renovation were unnecessary or foreseeable.
We likewise reject Levy's argument that he is entitled to indemnification from Vandervoort for any amount owed Allain. Acknowledging that Vandervoort authorized certain extra work without consulting Levy, it is clear that Levy has received the benefit of the additional work. Moreover, it is clear that Vandervoort's authorization for some of the changes was required during the time the Levys were absent and unavailable. Levy testified that because of hospitalization and travels he and his wife were not available for more than a month during the five-and-one-half-month period of renovation and that no arrangement was made with Vandervoort to handle unforeseen things in their absence. Although Levy testified that he did not authorize Allain or Vandervoort to do anything beyond the scope of the original oral agreement, with the exception of cleaning an air conditioner, the fact remains that the scope of the renovations was extensive and unforeseen problems were likely to occur. Since the extra work, though unauthorized because of Levy's absence, was reasonably required in furtherance of the contemplated renovation, we conclude any authorization by Vandervoort was for Levy's benefit. Levy, therefore, is not entitled to recovery from Vandervoort of any amount found payable to Allain.
We likewise find no error in the trial court's dismissal of claims asserted by Vandervoort. Vandervoort has not appealed the judgment of dismissal and, therefore, it is final as to him. Nor do we find merit in the Levys' claim for damages suffered and costs incurred in further renovation as a *486 result of the improper work performed by Vandervoort and Allain. The Levys simply failed to show defective workmanship requiring specific corrective work.[9] We find no error, therefore, in the dismissal of these claims.

QUANTUM
In his answer to Levys' appeal, Allain claims that he is owed the sum of $12,744.51 and that the trial court, although correctly deciding the issue of liability, unlawfully deducted $5,577.00 from the true amount owed. We disagree.
No brief was filed by Allain and there has been no argument by him concerning the particular items included in the $5,577.00 alleged to have been deducted in error. Accordingly, we can find neither basis nor support for Allain's claim.
In arriving at the amount of the judgment, the Commissioner relied on Vandervoort's audited summary of the work performed by Allain through March 1, 1973, as well as the original plans and specifications prepared by Vandervoort on September 18, 1972, and concluded that some of the work performed by Allain and claimed as extras were included in the original bid and specifications. Accordingly, the Commissioner, based on the audit, deducted $405.36 from the $7,572.87 figure found by Vandervoort to be the balance owed Allain for work performed.
Having examined these exhibits and the testimony of the witnesses, we cannot say the trial judge erred. Accordingly, we affirm the trial court's award of $7,167.51 to Allain based on the Commissioner's findings.
Finding no error, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] H. A. H. Vandervoort, Sr. vs. Charles A. Levy, Jr., No. 556-756, filed on June 6, 1973.
[2] Mr. and Mrs. Charles A. Levy, Jr. vs. H. A. H. Vandervoort, No. 557-960, filed on July 2, 1973.
[3] Andrew P. Allain d/b/a/ Allain Construction Co. vs. Charles A. Levy, Jr., and H. A. H. Vandervoort, Sr., No. 571-053, filed on April 5, 1974.
[4] This document includes insulation of windows, roofing work, replacement and repair of exterior woodwork, electrical work, various miscellaneous items of repair and replacement, and painting, all of which is itemized in considerable detail.
[5] The October 27 letter sets forth the cost of carpeting, furniture, draperies, lighting fixtures and decorative items in the family, living/dining, bedrooms, and baths. The total of the "decorative equipment" amounts to $19,383.90. The general contractor's price and the cost of decorative painting, electrical work and glassing are added to this figure to give a sum of $31,192.55 as the cost of the total work.
[6] Attached to Vandervoort's table of figures were 17 pages listing the "breakdown of extra work" performed by Allain. These extras included work on the windows, roofing, exterior woodwork, sliding doors, plate glass installation, sills and closet doors, tub and tile enclosures, hall locker shelves, drawers and hardware in the master bedroom and bath, drawers in hall locker, a refrigerator pad, kitchen baseboards, hardware and hamper work in another bath room, additional doors, frames and added shelving, undercutting doors to accommodate carpeting, installing formica slides on bedroom drawers, cleaning an air conditioning sump pit, installing hardware and door stops in the closet of the master bedroom, removal of terrazzo, renailing of ceiling in workroom, moving furniture, installation of gypsum board, a stainless steel counter and stove, support brackets in the workroom, repairs to drawers in a bedroom, installation of wood stripping on the carpet, construction of a ladder and storage deck, replacement of kitchen cabinets and bar slides, installation of certain wall covering, reconstruction of an air conditioning duct, construction of a backyard shed, certain work in the utility room, insulation in certain walls, removal of light fixtures and patching of the ceiling in the living room, and costs of supervising the extra work.
[7] LSA-C.C. arts. 2763 and 2764 provide as follows:

"Art. 2763. When an architect or other workman has undertaken the building of a house by the job, according to a plot agreed on between him and the owner of the ground, he can not claim an increase of the price agreed on, on the plea of the original plot having been changed and extended, unless he can prove that such changes have been made in compliance with the wishes of the owner."
"Art. 2764. An exception is made to the above provision, in a case where the alteration or increase is so great, that it can not be supposed to have been made without the knowledge of the owner, and also where the alteration or increase was necessary and has not been foreseen."
[8] See Hinrichs v. Edmons Realty & Investment Co., App. 1918, Orleans No. 7254, 1 Peltier's Orleans Appeals 45; Peresteras v. Lombardo, 3 La.App. 324 (Orl.La.App.1925).
[9] Although Levy testified that $30,900.00 was expended to "finish the house" his testimony was not supported by that of the new contractor or decorator. Furthermore, the complained of defects were general in nature and not corroborated by expert testimony.