428 So.2d 841 (1983)
ORLEANS ONYX, INC. d/b/a Ortega Onyx, Inc.
v.
Charles BUCHANAN, Lacisco, Inc. and Edward G. Brennan.
No. 5-407.
Court of Appeal of Louisiana, Fifth Circuit.
February 7, 1983.
Rehearing Denied April 18, 1983.
Laurence D. Rudman, New Orleans, for plaintiff-appellant.
*842 Irl R. Silverstein, Gretna, for defendantsappellees.
Before KLIEBERT, BOWES and CURRAULT, JJ.
CURRAULT, Judge.
This appeal arises from a judgment dismissing a lien claim filed by plaintiff, Orleans Onyx, Inc. against property owned by defendant, Edward G. Brennan.
Mr. Brennan, appellee and the owner of the premises at # 8 Chateau Haut Brian, Kenner, Louisiana, entered into an oral agreement in March, 1980, with Mr. Charles Buchanan for the sale of the said property for the price of Four Hundred Thirty Thousand and 00/100 Dollars ($430,000) cash. As part of that agreement, Mr. Brennan agreed to allow certain alterations to the residence.
On or about June 2, 1980, after extended negotiations in preparation of design and drawings, the prospective purchaser, Mr. Buchanan, entered into a contract with appellant, Orleans Onyx, Inc., d/b/a Ortega Onyx of New Orleans, for the furnishing and installation of certain cultured onyx products in the bathrooms of the premises. That contract contains the following verbiage:
"Mr. Charles Buchanan, a person of the full age of majority, who warrants by these presents that he is the owner of the premises designated in paragraph 1 below, hereinafter referred to as `Owner'...." (Orleans Onyx 2, pg. 1)
The contract between the parties provided for a 50 percent deposit prior to the commencement of work, which was satisfied by Mr. Buchanan's payment of the sum of Nine Thousand Nine Hundred and 00/100 Dollars ($9,900) on June 11, 1980.
On or about July 25, 1980, upon completion of the installation, Orleans Onyx, Inc. invoiced Mr. Buchanan for the balance due and received his company's check in the sum of Ten Thousand Two Hundred Nineteen and 50/100 Dollars ($10,219.50). This check was dishonored by the drawee bank by reason of an "informal signature," and was never redeemed by Mr. Buchanan.
Thereafter, counsel for appellant notified Mr. Buchanan and Mr. Brennan of the filing of a lien and privilege affidavit, by letter dated September 3, 1980. The lien affidavit was recorded in the mortgage records for the Parish of Jefferson on September 4,1980, within 60 days after the completion of the installation, all in accordance with the provisions of LSA-R.S. 9:4801, et seq.
Mr. Buchanan never completed the sale of the residence from appellee and is presently serving a sentence in the Federal penitentiary on unrelated fraud charges.
On November 6,1980, appellant filed suit against Charles Buchanan, Lacisco, Inc. and Edward G. Brennan, to preserve its materialman's lien and privilege, and for damages for breach of contract, and any other equitable relief. Appellant sought the remaining balance owed in the amount of Ten Thousand Two Hundred Twenty-Four and 50/100 Dollars ($10,224.50), with legal interest thereon from judicial demand until paid, 25 percent attorney's fees and all costs of the proceedings. Edward Brennan reconvened against appellant for damages in the amount of Four Thousand Five Hundred and 00/100 Dollars ($4,500).
Ultimately, default judgments were confirmed against defendants, Charles Buchanan and Lacisco, Inc., in the above amounts which remain unpaid.
After trial against the remaining defendant, Edward G. Brennan, the trial judge held that appellant's lien against Mr. Brennan was unenforceable for lack of privity, authorization or consent. Further, Mr. Brennan's reconventional demand was dismissed with prejudice, and appellant's suit against Mr. Brennan was dismissed at appellant's costs.
Appellant now appeals the honorable trial court's judgment.

ISSUES
(1) The trial court erred in holding the lien in favor of appellant unenforceable; and that
*843 (2) Appellee was unjustly enriched at the expense of appellant.
The first issue presented for our consideration is the enforceability of appellant's lien filed under the prior Public Works Act.[1] The Act creates a privilege, for certain claimants as prescribed, on immovable property upon which the claimant labored, supplied skills, materials or equipment, or furnished machinery, in connection with the erection, construction, repair or improvement of the property. The Act also protects the owner of the immovable property from the operation of privileges by requiring the contractor to execute a bond. It further operates to subject a non-owner, who has work done thereon, to all the obligations placed on the owner, in which case the privileges operate on whatever right the non-owner has to the use of the land. Fruge v. Muffoletto, 137 So.2d 336 (La. 1962).
Appellant herein filed a lien affidavit pursuant to the requirements for preservation and ranking of lien rights elucidated in prior LSA-R.S. 9:4802. In the affidavit he asserted his rights under LSA-R.S. 9:4811, but at time of trial and in brief to this court seeks to rely on LSA-R.S. 9:4801, claiming an error was made in the numbering of the Articles. Presupposing the error does not affect his rights under the Act, he thereafter presented argument based on LSA-R.S. 9:4801 and cases reviewing "consent" of the owner under the article. He presents two further arguments: (1) That where two innocent parties are involved in a loss to one, the party most likely to have protected against the harm should bear the loss[2]; and (2) That appellee was unjustly enriched at appellant's expense.
Appellee conversely argues that appellant's rights are determined by the article upon which the claim is based, thereby limiting his claim to the rights elucidated in LSA-R.S. 9:4811. His argument is based on the concept that the Act is a derogation of common rights and must be strictly construed in favor of the person in whose common rights are favored, i.e., the owner of the property.[3]
The technical error of citing the incorrect article in the affidavit does not abrogate the lien claim. The proper procedures for preserving privileges require a sworn statement[4] describing the property and the debt. There is nothing sacramental in the format.
"The purpose of the sworn statement is to give notice to the owner (and contractor) of the existence of the claim and to give notice to persons who may deal with the owner that privilege is claimed on the property." LSA-R.S. 9:4822, Revision of 1981, Comment (g) at page 191. See also Mercantile Nat. Bank of Dallas v. Thos. Driscoll, Inc., 194 La. 935, 195 So. 497 (La.1940); Hughes v. Will, 35 So.2d 241 (Orl.App.1948); Paul F. Riviere v. Universal Excavator, Inc., 358 So.2d 670 (La.App. 1st Cir.1978).
The theory relied on by appellee refers to the interpretation of a claim under the articles, i.e., the articles themselves are stricti juris.
A review of appellant's affidavit indicates that it is sufficiently constructed to give notice as required. With that issue *844 disposed of, we turn now to decide whether appellant's claim falls within any article of the Act.
In Fruge, the Supreme Court had certified to it questions of law in a matter regarding the Act. In its opinion, the court discussed at great length the purposes, policies and obligations imposed by the Act.[5] There, a lessee contracted for improvements but subsequently became bankrupt, and the claimant thereafter sought to enforce its liens against the owner. The court stated that the primary object in construing a statute is to ascertain, if possible, the purpose of the legislature. All parts, provisions or sections must be read together and construed in harmony with the whole.
"... when read as a whole, those sections throwing any light on other sections being correlated, the act is more comprehensive and is capable of a construction clearly within the intendment of the lawmakers that leads to no absurd consequences, without violence being done to the rule of interpretation that acts in derogation of common rights must be strictly construed." At page 339 citing Glassell, Taylor & Robinson v. John W. Harris Assoc., 209 La. 957, 969, 26 So.2d 1, 5.
The privileges arising under LSA-R.S. 9:4801, is granted to those who contract with the owner or his agent. Fruge v. Muffoletto, 137 So.2d 336 (La.1962) (See Footnote 5.); Sinclair v. Wm. M. Justice, Jr., Clerk of Court and Waguespack & Asso., Inc. 414 So.2d 826 (La.App. 4th Cir. 1982). See also LSA-R.S. 9:4801, Comment (a), 1981 Act. The essence of the article is that the work be undertaken by the owner or his representative for the owner's account. Fruge, supra; Sinclair, supra.
LSA-R.S. 9:4811 delineates the lien rights of a party when doing work at the behest of someone other than the owner or his agent: "... where the person for whom the work is done or with whom the contract is made, or by whom the work is done, is not the owner of the land...." (Emphasis added). At least as respects lessor/lessee relationships, it is the sole authority for a lien. Fruge, supra. It further provides that the non-owner is subject to all the obligations incumbent on an owner, "... and the privileges shall operate upon whatever right the said person having the work done or doing the work may have to the use of the land as lessee." Consent or knowledge of the owner in this case is irrelevant. Fruge, supra. A review of the cases interpreting Article 9:4811, as well as the language of the Article in whole, leads to a conclusion that it refers only to lessor/lessee or some other type of contractual relationship between the owner and the party seeking the improvements. However, even in these cases, the Supreme Court noted in Fruge that in some circumstances an owner may be estopped from raising defenses to the privilege by his conduct.
The facts of this case reveal that at no time did owner-appellee intend the work to be done for his own account. The design of the bathrooms, the materials, and the company who contracted the work were chosen by Buchanan, the prospective purchaser. Further, while Brennan knew of the work, their agreement was to the effect that Buchanan would be totally responsible for payment. Buchanan was not an agent or representative nor was there a lessee/lessor or similar relationship in existence between appellee and Buchanan. Therefore, under Fruge, neither article provides a basis for enforcement of the lien particularly in view of the fact that the Public Works Act is stricti juris and cannot be extended. Pennington, supra.
Appellant urges, however, that the case of Meadowview Park Subdivision v. Morrison, supra, should control in that the Fruge case concerned a lessee/lessor relationship, whereas the facts in Meadowview are on point with the facts herein.
In Meadowview, Mr. Gordon agreed to purchase certain lots from plaintiff, Mr. Teague, at a price to be later determined.
*845 The oral agreement provided for payment of the purchase price in full before construction was to commence. Prior to payment or determination of the purchase price, Gordon placed signs on each lot with the name of his construction company, hired workmen and began construction. Subsequently Gordon disappeared without paying any of his employees, and the defendant and other laborers filed liens for wages as a result. Meadowview brought suit seeking cancellation of the liens. The court of appeals, reversing the trial court, granted the liens under LSA-R.S. 9:4801, basing its decision on the rule that as between two innocent parties, one of whom must suffer loss, he that could more easily have protected himself should be called upon to bear the loss.
In reaching its conclusion, the court reached two important factual findings: (1) That the owner had knowledge of the work and "allowed the work to continue in the hope or belief that Gordon would secure money from some source." At page 779; and (2) That the workmen were ignorant of the fact that Gordon was not the owner of the property upon which the labor was performed.
The testimony herein reveals that while appellee knew of the work being done, as in Meadowview, unlike that case appellant was placed on notice, through its agent, prior to execution of the contract that Buchanan was not the owner. Furthermore, the Meadowview case was decided prior to the Supreme Court delineation of lien rights in Fruge. Thus, in our opinion Meadowview is neither supportive of appellant's position nor controlling. Therefore, the judgment holding the lien unenforceable is affirmed.
Appellant's final issue presents the question of unjust enrichment. While not pleaded by appellant originally, the issue was argued and evidence presented in the trial of the matter without objection, and is thus properly before this court. The trial court judgment, however, is silent in this regard, and it is well-established law that such silence constitutes a denial.
The doctrine of unjust enrichment requires the following as a prerequisite to recovery:
(1) An enrichment;
(2) An impoverishment;
(3) A connection between the two;
(4) An absence of justification or cause for this enrichment and impoverishment; and
(5) An absence of a remedy provided by law.
Boagni v. State of Louisiana, 399 So.2d 813 (La.App. 3d Cir.1981); Vandervoort v. Levy, 396 So.2d 480 (La.App. 4th Cir.1981).
In Vandervoort, the homeowner benefitted from extra work caused to be done by the architect without their approval. A similar situation exists in this case. Buchanan benefits from the installation of the more luxurious bathrooms than he intended to place in the home. Appellant performed labor and furnished materials for which he received no compensation. A connection between the enrichment and the impoverishment was the failure of the owner to take steps to prevent the harm which he could have or should have foreseen. Furthermore, since Buchanan hired appellant to perform the work, there is no contractual relation between Brennan and appellant. Accordingly, there is an absence of justification, and appellant has no other legal remedy available at law. Thus, appellant has established entitlement under the action de in rem verso. However, although the appellant has a right to recover under this doctrine, the case requires a remand for determination of the exact amount owed.
Therefore, for the above stated reasons, that portion of the judgment dismissing the lien claim is affirmed; that portion of the judgment denying the claim for unjust enrichment is reversed; and the matter is remanded for a determination of the amount owed, each party to bear its own costs of this appeal.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
NOTES
[1] The Public Works Act was revised and renumbered by Act No. 724 of 1981. "The revision largely preserves the framework of the former law and maintains, for the most part, the relative obligations...." Expose des Motifs, Chapter 2. Part 1. At page 145. LSA-R.S. 9:2801-11: End.
[2] In support appellant cites Meadowview Park Subdivision v. Morrison, 130 So.2d 776 (La. App. 2d Cir.1961); Davis v. Miller Builders & Developers, Inc., 340 So.2d 409 (La.App. 2d Cir.1976); Causeway Mortgage Co., Inc. v. Dordain, 247 So.2d 277 (La.App. 4th Cir.1971); National Acceptance Co. of America v. Wallace, 194 So.2d 194 (La.App. 2d Cir.1967); Baton Rouge Lumber Co. v. Gurney, 173 So.2d 251 (La.App. 1st Cir.1965); Clark-Kelley Livestock & Auction Cp. v. Pioneer Bank & Trust Co., 228 La. 224, 81 So.2d 869 (La.1955).
[3] Citing Pennington v. Campenella, 180 So.2d 882 (La.App. 1st Cir.1962) and cases cited therein.
[4] The requirement that the statement be sworn has been eliminated under the 1981 revision of the Act.
[5] See also Fruge v. Muffoletto, 140 So.2d 173 (La.App. 3d Cir.1962) which contains the certification by the Louisiana Supreme Court case cited above.