LANDRY, Judge.
In these consolidated actions, appeals have been taken by Altex Ready Mix Concrete Corporation (Altex), and Anderson Dunham, Inc. (Dunham), from judgments rejecting their demands for recognition of their alleged materialmen’s liens and privileges against Watts Brothers Builders, Inc. (Watts), owners and developers of a subdivision, and Hanover Insurance Company (Hanover), surety on the performance bond provided by John P. Cryer Construction Company (Cryer), who contracted to perform the construction work on Watts’ subdivision. We affirm in part, reverse in part and render judgment in favor of Altex and Dunham against Hanover.
The issues presented are: (1) The alleged applicability of LSA-R.S. 9:4816(A), pertaining to the filing of liens against con *1307 struction of two or more buildings or works by a single general contractor under a single building contract when buildings or works are situated on adjacent lots or parcels of land of a single owner; (2) Were the liens of Altex and Dunham timely filed so as to create a privilege against Watts’ land and improvements; and, (3) Did Altex and Dunham timely file direct actions against Hanover.
There is virtually no dispute as to the operative facts. On April 6, 1973, Watts purchased a tract of land for development into a residential subdivision. For purely economic and business reasons, Watts elected to divide the land into two subdivisions, designated as Woodland Ridge Sixth Filing and Woodland Ridge Seventh Filing, for purposes of development. Watts also elected to first construct the streets, sewers and sidewalks for the Sixth Filing and subsequently build the streets, sewers and sidewalks for Seventh Filing, dovetailing the latter work into the former. In furtherance of the plan, Watts entered into two written contracts with Cryer on April 12, 1973, one to construct the sewer system in Sixth Filing for $20,443.10, and the other for streets, drainage and sidewalks in Sixth Filing for $93,717.00. Performance bonds for both contracts were written by Hanover, through its alleged agent, Virgil Seale, in the stated contract amounts. Both contracts and bonds were timely recorded. Certificates of substantial completion of the sewer contract and the streets, drainage and sidewalk contracts were recorded by Watts January 28, 1974, and January 29, 1974, respectively. As a further precaution, Watts recorded an additional acceptance of both Sixth Filing contracts on May 8, 1974. On June 24, 1974, Watts was issued a clear lien certificate by the Clerk of Court.
The sale of lots in the Sixth Filing development exceeded Watts’ expectations to such extent that prior to completion of said work, Watts signed a contract with Cryer, on July 18, 1973, for construction of the sewer system, streets, drainage and sidewalks on the Seventh Filing for the sum of $63,780.00. Hanover bonded this contract for Cryer at the contract price, which contract and bond were duly recorded. A certificate of acceptance was filed on July 18, 1974, for the Seventh Filing work and a clear lien certificate with respect thereto was issued by the Clerk of Court on September 9, 1975.
On October 11,1974, Dunham liened both the Sixth and Seventh Filing work in the sum of $37,186.09, for concrete and pipe furnished the projects, which claim was judicially reduced to $32,334.43. Altex liened both projects, for concrete furnished, on October 22, 1974, in the amount of $30,-545.01.
Watts obtained bonds to secure the Dun-ham and Altex liens and filed suit to cancel the liens. Alternatively, Watts prayed for reduction of his bonds to the amount allegedly due Dunham and Altex, should their claims be held valid. Dunham and Altex reconvened in Watts’ cancellation suit, urging recognition of their liens and alleging their unawareness of two construction contracts. They also alleged that work on both constructions was continuous and that the subdivision was not substantially complete upon recordation of the acceptances filed. Both Dunham and Altex third partied Cryer and Hanover, in solido, for the amount of their respective claims.
On June 4, 1975, Watts filed an amended and supplemental petition, making both Cryer and Hanover defendants in the main demand.
On July 24, 1975, Hanover answered Watts’ original and supplemental petitions, alleging Watts still held some monies owed Cryer on the contracts. Hanover also urged the invalidity of the bond issued by their alleged agent, Virgil L. Seale, Jr., because Seale’s agency had been previously revoked. Additionally, Hanover filed a peremptory exception of no cause of action against Altex, predicated on Altex having asserted a third party demand against Hanover, independent of Watts’ main demand, *1308 and therefore in contravention of LSA-C. C.P. Article 1111.
On October 8, 1975, Dunham filed suit Number 11,336 against Watts, Cryer and Hanover, based on the same claims asserted in Dunham’s third party demand in Watts’ action to cancel the liens.
Both suits were consolidated for trial, following which the trial court found the January 28 and 29,1974, acceptances of the Sixth Piling were premature, but that the work on the Sixth Piling was substantially complete for the use for which it was intended, as of the May 8, 1974, acceptance. He also found that the liens filed by Altex and Dunham on October 11 and 22, 1974, against the Sixth Filing work, were untimely and did not preserve a lien against the Sixth Piling work.
As to the Seventh Filing work, the trial court held the July 18, 1974, filing of acceptance was premature, and that said work was complete as of August 26, 1974. On this basis, the trial court held the liens filed against the Seventh Filing on October 11 and 22, 1974, were untimely, and did not meet the requirements of LSA-R.S. 9:4802.
As regards Hanover’s bonds, the trial court held them valid because he found Seale was acting as Hanover’s agent with apparent authority. The trial court also held the third party demands of Altex and Dunham against Hanover to be proper but nevertheless dismissed them as being moot. Dunham’s direct action against Hanover was dismissed on the ground that said cause of action prescribed because Dunham did not bring that suit until October 8, 1975. Altex and Dunham were given judgment by default against Cryer. A retainage of $13,430.38, held by Watts, was equally divided between Altex and Dunham.
Altex and Dunham have appealed. No other party has appealed or answered the appeals of Altex and Dunham.
EFFICACY OF THE ALTEX AND DUNHAM LIENS
Altex and Dunham maintain the trial court erred in not finding the Sixth and Seventh Filings to be one continuous phase of the subdivision development such that the lien filing period should date from completion or acceptance of the Seventh Filing, as provided for by LSA-R.S. 9:4816(A), which recites:
“Any person furnishing service or material or performing any labor for the contemporaneous and continuous construction or improvements of two or more buildings or works by a single general contractor under a single construction contract which buildings or works are situated on adjacent lots or parcels of land of a single owner, may file a single privilege upon all said buildings or works upon the lands on which they are situated. Such a privilege shall secure the payment in principal and interest of the entire amount due for all service, material or labor, furnished and performed, and the costs for recording said privilege. Proof of the performance of labor on, or the delivery of materials to any of the said buildings or works shall be sufficient to establish the performance of labor on, or the delivery of materials to all such buildings or works. Such a privilege shall not attach to or bear upon any building or upon the land on which it is situated, where all materials and service have been furnished and all labor performed upon that particular building or portion of land on which it is situated, more than 60 days prior to the filing of said privilege.' Such a privilege shall not attach to or bear upon buildings or works or the land on which they are situated, constructed or improved by other general contractors on adjacent lots or parcels of land, during a separate phase of subdivision development and pursuant to separate and distinct construction contracts." (Emphasis added.)
The intent of Section 4816(A), above, is to encourage and facilitate subdivision development and construction of houses, and at the same time protect laborers and furnishers of materials for such projects, to *1309 the end they might recover the value of their goods or services. Bernard Lumber Co. v. John F. Cerise, 148 So.2d 819 (La. App. 4th Cir. 1963). In such instances where construction is continuous and performed pursuant to a single construction contract, Section 4816(A), above, simplifies the filing of liens and extends the protection initially provided laborers and materialmen under LSA-R.S. 9:4802. The latter part of Section 4816(A), above, refers merely to the privilege granted in the first sentence of the section, namely, those instances where there is a single construction contract. In such cases, a single privilege may be filed on all buildings and works and the lands on which they are constructed. Louisiana Nat. Bank of Baton Rouge v. Triple Con. Inc., 334 So.2d 516 (La.App. 1st Cir. 1976).
Because lien statutes are in derogation of common rights, they must be strictly construed. Refractory Construction, Inc. v. Cities Service Oil Company, 278 So.2d 510 (La.App. 3rd Cir. 1973); McGill Corporation v. Dolese Concrete Company, 201 So.2d 125 (La.App. 1st Cir. 1967).
Because Section 4816(A), above, is expressly limited in application to instances where a single contractor undertakes work under a single construction contract, its terms may not be extended to a situation where two contracts are involved. See McGill Corporation, above.
The obvious intent of Section 4816(A), above, is to protect laborers and materialmen who perform labor or furnish materials or supplies for multiple buildings or works performed pursuant to a single contract under circumstances where they cannot be reasonably expected to identify the precise building or work on which the labor was performed or for which the materials or supplies were furnished. McGill Corporation, above.
We find, however, that Section 4816(A), above, is inapplicable to the case at hand. Filings Six and Seven were not constructed pursuant to a single contract, but pursuant to two separate and distinct recorded contracts which we find to have been let separately for legitimate economic and business reasons. It follows that the lien period applicable to each said contract must be determined pursuant to LSA-R.S. 9:4801, 4802, which provide the delay within which liens must be filed in those cases involving a written and recorded contract and bond. In such instances, timely filing of a lien preserves lienors rights against the works for which he has furnished materials or performed labor. Prescription thereon does not commence until date of registry of the owner’s acceptance or registry of notice of default.
Acceptance of work by an owner is defined in LSA-R.S. 9:4802.1, which pertinently provides:
“Whenever any contract for the repair, construction, erection, construction or improvement of any work on immovable property is entered into in accordance with the provisions of R.S. 9:4802, the owner may have recorded an acceptance of said work, ... or, at its discretion upon substantial completion of the work or of any specified area thereof, upon recommendation of the architect or engineer of the owner. ‘Substantial completion’ is defined for the purposes of this Chapter, as the finishing of construction, in accordance with contract documents as modified by any change orders agreed to by the parties, to the extent that the owner can use or occupy the works or use or occupy the specified area of the works for the use for which it was intended.”
In Lighting, Inc. v. Trans-Gulf Construction Co., Inc., 324 So.2d 454 (La.1975), the Supreme Court interpreted Section 4802.1, above, to mean a building is substantially complete when construction in accord with the contract has proceeded to a point that the owner can occupy the work for its intended use, and also noted:
“An acceptance is a notice of completion. It becomes operative when it conforms to *1310 the facts of construction. We think the better view is that a prematurely recorded acceptance is inchoate and becomes operative when the building is complete or substantially complete. At that time, the two essential factors concur: recordation and completion.”
Applying the rule in Lighting, above, we find the trial court properly held that the January 28 and 29, 1974, acceptances of Sixth Filing were premature. Deliveries were made to the job sites subsequent to said acceptances; sidewalks, aggregating $8,751.60 at contract unit prices, remained to be constructed; concrete revetment work, aggregating $1,080.00, had not been installed; and street signs totalling $300.00 had not been erected. Additionally, City-Parish approval, without which no lots could be sold of record, was not obtained until April 26, 1974. It appears, however, that by May 8, 1974, this unfinished work had been completed.
As regards recordation of the Seventh Filing acceptance on July 18, 1974, the record shows that as of that date, approximately 10% of the sidewalks were not laid; a considerable portion of the sidewalk which had been poured was defective and had to be reconstructed; and a few punch list items remained to be completed. It also appears that Watts had repeatedly requested Cryer to finish the sidewalk, replace the defective walk areas and do the key punch items, but without success. Watts eventually finished the work itself, by August 26, 1974, as of which date Watts retained $19,-671.18 of the contract amount due Cryer, and of which Watts expended $6,240.79 completing the project, including correction of defective work performed by Cryer. On September 23, 1974, Dunham delivered 100 feet of pipe at a cost of $724.83, which, though billed to Cryer, was accepted and receipted for by Watts. Appellant urges that this last delivery date fixes completion as of September 23, 1974. We disagree, as did the trial court. The record convinces us beyond doubt that Seventh . Filing was complete as of August 26, 1974, and that as of that date, Watts could effectively take possession of the work and commence the sale of lots in Seventh Filing. The subsequent delivery of such a relatively small amount of material did not extend the effective acceptance date in this instance.
Since Dunham and Altex filed their liens October 11, 1974, and October 22, 1974, respectively, they were not filed within the 30 day period provided by Section 4802, above, and therefore do not accord said parties liens against the lands and improvements involved herein.
HANOVER’S BOND LIABILITY
An owner is not legally required to enter into a written contract to construct a private work. Neither is an owner required to record a written contract for such work or furnish bond therefor. Where, however, such a written contract is recorded and bond secured therefor, the law accords a lien and privilege against the land and work involved in favor of a laborer who performs work on the project, or a materialman who furnishes materials and supplies, when the laborer or materialman timely files his lien. LSA-R.S. 9:4802.
In such instances, the liability of the surety is provided for in LSA-R.S. 9:4803 and 9:4814, which pertinently recite:
LSA-R.S. 9:4803. “Subject to the limitation provided in R.S. 9:4814, where the owner has required the bond herein provided, the surety thereon shall be liable in solido with the contractor for all the labor and materials used in the said work of improvements, and the costs of recording valid privileges up to the amount of the bond, and the cancellation and erasure of the inscription of the said contract . . . shall not affect the liability of the said surety on the said contract for such labor and materials, as to which labor and material the said surety shall be bound to the same extent as the said contractor *1311 LSA-R.S. 9:4814. “A. Except as provided in Subsection C. of this section nothing in this Sub-part shall be construed as to deprive any claimant of his right of action against the surety signing and (sic) [any] bond furnished in connection with any building contract or sub-contract, or against the principal obligor thereunder, which right of action shall accrue at any time after maturity of the claim of the said claimant.
“B. . . . Any action against the surety must be brought within one year from the registry of acceptance of the work or of notice of default of the contractor. When claimants shall not have preserved their privileges and shall afterwards bring a direct action against the surety, they shall have priority as between themselves after payment of all recorded claims against the balance for which the surety is liable in the order of the filing of their respective suits.” (Emphasis by the court.)
The cited provisions do not require a laborer or materialman to file a claim within the 30 day period mentioned in Section 4802, above, as a condition precedent to a direct action against a surety. Neither is a laborer or materialman required to lien a project to obtain personal judgment against a contractor with whom he is in privity. American Creosote Works v. Aetna Casualty & Surety Company, 167 La. 601,120 So. 21 (1929); Apex Sales Company v. Abraham, 201 So.2d 184 (La.App. 4th Cir. 1967). Prescription on a direct action against a surety commences, however, upon filing of acceptance by the owner and suit against the surety must be brought within a year of the filing of the owner’s acceptance.
Applying these principles to the case at hand, we find that Watts instituted its suit on January 6, 1975. Altex and Dunham answered Watts’ demands and filed third party claims against Hanover on January 29 and January 30, 1975, respectively. On June 4,1975, Watts amended its petition to make Hanover a defendant in Watts’ principal demand.
LSA-C.C.P. Article 1153 recites that when an action or defense asserted in an amended petition or answer arises out of the conduct, transaction or occurrence alleged or attempted to be alleged in an original pleading, the amendment relates back to the date of filing of the original pleading. Though Hanover was not made defendant in Watts’ original petition filed January 6, 1975, the third party demands against Hanover asserted by Altex and Dunham on January 29 and January 30, 1975, and the amendment of Watts’ petition on June 4, 1975, to include Hanover as defendant in Watts’ main demand, have the effect of dating the claims of Altex and Dunham against Hanover as of January 29 and January 30, 1975, respectively, the dates said third party demands were filed, which were within a year of acceptance of the contracts involved herein. The third party demands of Altex and Dunham against Hanover are not incidental demands. Incidental demands are reconvention, intervention and demands against third parties. LSA-C.C.P. Article 1031. The demands of Altex and Dunham against Hanover are not in reconvention against plaintiff Watts. They are not intervention because both Altex and Dunham were made defendants in Watts’ main demand. They are not third party demands because Hanover is not alleged to be warrantor of Altex or Dunham and neither is Hanover asserted to be liable with Altex and Dunham on Watts’ main demand. LSA-C.C.P. Article 1111.
In legal effect, the third party demands of Altex and Dunham against Hanover are cumulation of actions. LSA-C.C.P. Article 463. We deem Hanover’s exception of no cause of action filed against Altex to be an exception of improper cumulation. Although Hanover urges it filed a similar exception against Dunham, no such exception appears of record. LSA-C.C.P. Article *1312 464 provides that an exception of improper cumulation must be sustained and the action dismissed when the exception is based on lack of jurisdiction or improper venue. In all other instances, the trial court may order separate trial of the improperly cumulated action, or require plaintiff to elect the action with which he will proceed. In this case, the trial court did not pass on Hanover’s exception of no cause of action (improper cumulation). Under the jurisprudence, the exception is deemed to have been overruled. Melde Tile Roofing Co. v. Compac Homes, Inc., 92 So.2d 735 (La.App. Orleans, 1957); Succession of Foster, 240 La. 269, 122 So.2d 96 (1960). Moreover, Dunham’s separate suit against Hanover was consolidated with Watts’ action and the two tried as one with the consent of all concerned, including the third party demands of Altex and Dunham in Watts’ action.
The judgment of the trial court decreeing Hanover’s bond valid and overruling Hanover’s exception of no cause of action (improper cumulation of action) against Altex has become final in these respects, considering Hanover has neither appealed nor answered the appeals taken by Altex and Dunham. Assuming arguendo, the trial court erred in holding the bond valid and denying Hanover’s exception of improper cumulation, no relief can be afforded Hanover therefrom under the circumstances. LSA-C.C.P. Articles 2083, 2133.
We find that the demands of Altex and Dunham against Hanover were timely filed and that the trial court erred in deciding otherwise.
THE THIRD PARTY DEMANDS OF ALTEX AND DUNHAM
The record discloses that Dunham furnished materials for subject construction projects on which there is a balance due in the sum of $32,334.43, and that Altex furnished materials on which a balance is due in the amount of $30,545.01. The trial court divided equally, between Altex and Dunham, the sum of $13,430.38, which the court found to have been retained by Watts out of monies due Cryer for work performed, giving Altex and Dunham the sum of $6,715.19 each. It follows that Dunham is entitled to judgment against Hanover and Cryer in the sum of $25,619.24, in soli-do, and Altex is entitled to judgment against Hanover and Cryer in the amount of $23,829.82, in solido.
DECREE
The judgment of the trial court rejecting the claims of Altex and Dunham against Hanover is reversed and judgment rendered herein in favor of Altex against Hanover and Cryer in the sum of $23,829.82, in soli-do, with legal interest from date of judicial demand until paid, and in favor of Dunham against Hanover and Cryer in the sum of $25,619.24, in solido, with legal interest from date of judicial demand, until paid; in all other respects the judgment is affirmed, all costs of these proceedings to be paid by Cryer and Hanover.
Affirmed in part, reversed in part and rendered.