466 So.2d 61 (1985)
LAKE FOREST, INC.,
v.
CIRLOT COMPANY, Circle Inc., A.J. Trucks, Inc., A.J. Phillip, Inc., and Gulf Outlet Fuel and Marine Supplies, Inc.
No. CA-2252.
Court of Appeal of Louisiana, Fourth Circuit.
March 6, 1985.
J. Ren& eacute; Williams, Montgomery, Barnett, Brown & Read, New Orleans, for plaintiff-appellant.
*62 D. Michael Dendy, McCloskey, Dennery, Page & Hennesy, New Orleans, for defendants-appellees (Cirlot Company and Circle, Inc.).
Michael F. Somoza, Amato & Creely, Gretna, for defendant-appellant (A.J. Phillip Trucks, Inc.).
Dan C. Garner, John G. Munoz, Michael J. Navitsky, Garner & Munoz, New Orleans, for defendants-appellants (Gulf Outlet Fuel and Marine Supplies, Inc.).
Before REDMANN, C.J., and BARRY and KLEES, JJ.
BARRY, Judge.
Plaintiff Lake Forest, Inc. appeals the dismissal of its petition to cancel various liens on its property.
On July 13, 1981 Lake Forest and Lionel J. Favret Construction Company, Inc. signed an agreement which granted Favret the exclusive right to operate a sand pit for 20 months. Thereafter, Favret was to make the pit conform to certain boundaries with specified slopes and fill the pit with water within 30 days. Favret failed to pay $58,000.00 in royalty payments and Lake Forest's subsequent lawsuit was stayed because Favret filed for bankruptcy.
Several sub-contractors of Favret filed liens[1] and Lake Forest's suit to void the liens was dismissed. Lake Forest argues the Private Works Act, La.R.S. 9:4801 et seq., does not create a lien if there has been no improvement of an immovable. Lake Forest also claims its agreement with Favret is a lease for extraction of minerals and the liens should only apply against the lessee, Favret.
The sub-contractors counter that the agreement was not a lease, that the intent was to dig a lake to develop Lake Forest's adjacent property and such an improvement makes the Private Works Act applicable. They contend the sand pit operation should be considered a "work" under the Act.
La.R.S. 9:4801 (pre-1981 R.S. 9:4801)[2] creates a privilege in favor of persons who directly contract with an owner or his agent. See Comment (a) to La.R.S. 9:4801; Sinclair v. Justice, 414 So.2d 826 (La.App. 4th Cir.1982).
La.R.S. 9:4802 (consolidating provisions of pre-1981 R.S. 9:4801, 4802, 4806 and 4812) applies to persons who supply materials to a contractor or subcontractor with no direct contractual relationship with the owner. See Comment (a) to R.S. 9:4802.
La.R.S. 9:4806 (incorporating the principle of pre-1981 R.S. 9:4811) the sole authority for a lien under a lessor/lessee relationship, Orleans Onyx, Inc. v. Buchanan, 428 So.2d 841 (La.App. 5th Cir.1983), writ denied 434 So.2d 1096 (La.1983), provides:
A. An owner, co-owner, naked owner, owner of a predial or personal servitude, possessor, lessee, or other person owning or having the right to the use or enjoyment of an immovable or having an interest therein shall be deemed to be an owner.
B. The claims against an owner granted by R.S. 9:4802 are limited to the owner or owners who had contracted with the contractor. If more than one owner has contracted each shall be solidarily liable for the claims.
C. The privilege granted by R.S. 9:4801 and 4802 affects only the interest in or on the immovable enjoyed by the owner whose obligation is secured by the privilege.

*63 D. The privilege granted by this Part upon a lessee's rights in the lease or buildings and structures shall be inferior and subject to all of the rights of, or obligations owed to, the lessor, including the right to resolve the lease for nonperformance of its obligations, to execute upon the lessee's rights and to sell them in satisfaction of the obligations free of the privilege. If a sale of the lease is made in execution of the claims of the lessor, the privilege attaches to that portion of the sale proceeds remaining after satisfaction of the claims of the lessor.
La.R.S. 9:4808 (with no pre-1981 counterpart) defines "a work" under the Private Works Act:
A. A work is a single continuous project for the improvement, construction, erection, reconstruction, modification, repair, demolition, or other physical change of an immovable or its component parts.
B. If written notice of a contract with a proper bond attached is properly filed within the time required by R.S. 9:4811, the work to be performed under the contract shall be deemed to be a work separate and distinct from other portions of the project undertaken by the owner. The contractor, whose notice of contract is so filed, shall be deemed a general contractor.
C. The clearing, leveling, grading, test piling, cutting or removal of trees and debris, placing of fill dirt, leveling of the land surface, or performance of other work on land for or by an owner, in preparation for the construction or erection of a building or other construction thereon to be substantially or entirely built or erected by a contractor, shall be deemed a separate work to the extent the preparatory work is not a part of the contractor's work. The privileges granted by this Part for the work described in this Subsection shall have no effect as to third persons acquiring rights in, to, or on the immovable before the statement of claim or privilege is filed.
D. This part does not apply to:
(1) The drilling of any well or wells in search of oil, gas, or water, or other activities in connection with such a well or wells for which a privilege is granted by R.S. 9:4861.
(2) The construction or other work on the permanent bed and structures of a railroad for which a privilege is granted by R.S. 9:4901.
(3) Public works performed by the state or any state board or agency or political subdivision of the state.
Lake Forest argues the Public Works Act covers work on any "building or structure upon the land," Preamble to La.Acts 1922, No. 139, or any "improvement of the immovable," Preamble to La.Acts 1926, No. 298. The most recent expression of legislative intent is found in the Expose des Motifs preceding La.Acts 1981, No. 724, which revised, amended and reenacted the Louisiana Private Works Act. The two fundamental policies of the Act are declared to be:
First, persons who contribute to the improvement of an immovable are entitled to legal protection so that an owner or his creditors do not appropriate the value of their efforts without reimbursing them. Second, owners, who initiate the work, should take reasonable steps to see that their contractors do not appropriate the price of the work and leave their laborers and suppliers unpaid.
Although "improvement" language is used in this general statement, La.R.S. 9:4808 contains a broader wording. The definition of "work" as "a single continuous project for the improvement ... or other physical change of an immovable...." appears to apply to this unique sand pit operation. Contrary to Lake Forest's argument, including this type of operation within R.S. 9:4808 does not mean that any party who works on immovable property can have a lien. R.S. 9:4808 C provides that clearing, leveling, placing of fill dirt or performance of other work in preparation for construction is a separate work; privileges *64 for preliminary site work are effective. See Comment (c) to R.S. 9:4808. See generally Daigrepont v. Welch, 358 So.2d 1302 (La.App. 3rd Cir.1978), writ denied 360 So.2d 1178 (La.1978).
Central Louisiana Electric Company v. Giant Enterprises, Inc., 371 So.2d 641 (La. App. 3rd Cir.1979), writ denied 375 So.2d 646 (La.1979), considered what constituted work performed for the improvement of immovable property under La.R.S. 9:4801(2) (pre-1981). There CLECO and Giant Enterprises entered into a contract by which Giant was to clear land to create a lake to be used for cooling generators in a power plant CLECO was building. Giant executed a subcontract and an assignment of all its rights under the clearing contract to CFC, who later subcontracted with Labor to extend the length of a drainage ditch. Labor filed an affidavit on its unpaid claims and sued. Citing two cases,[3] the Third Circuit concluded that since Labor's work was a necessary incident of the clearing contract and the clearing was part of the construction of the cooling reservoir (a created lake in part), the claim was lienable as an improvement to the land.
We conclude this sand pit, excavated within specific boundaries with designated slopes and required to be filled with water, was designed to improve Lake Forest's property. At the very least the operation was for the "modification ... or other physical change of an immovable." Noting that statutes creating privileges and liens are in derogation of common rights and must be strictly construed, Watts Brothers Builders v. Altex Ready Mix Concrete Corporation, 349 So.2d 1304 (La.App. 1st Cir.1977), writ denied 352 So.2d 1032 (La. 1977), National Bank of Commerce in New Orleans v. Justice, 212 So.2d 711 (La. App. 4th Cir.1968), we find this excavation qualifies as a "work" under R.S. 9:4808 A.
Lake Forest next argues the agreement is a lease which granted Favret a right of use over its property and any lien is valid only against Favret's rights as lessee.
Favret was given the right to operate the sand pit for 20 months. The royalty was ½ of the selling price of materials excavated from the pit with a minimum 76¢ per cubic yard and an additional 15¢ per cubic yard for material removed by trucks owned or contracted by Favret. The sales price of materials from the pit would be determined by both parties. Pit price increases were to be shared equally. Each party was responsible for ½ of the severance taxes. Additionally, Lake Forest had the right to purchase material from the pit and the right to have its representative at the pit to observe all operations. The agreement contained an indemnification clause in which Favret agreed to hold Lake Forest harmless from all claims, liens, etc., as well as a provision that the contract did not constitute a partnership, joint undertaking or joint venture nor was Favret to be deemed an agent or employee of Lake Forest. Upon termination of the agreement Favret was to fill in the pit so that the area not exceed delineated boundaries and to maintain and restore the slopes according to certain specifications. Within 30 days of termination, Favret had to fill the pit with water. Favret was obligated to diligently conduct the operation to maximize the sale of material from the pit. There was also a prohibition against recording the agreement in the archives, mortgage office or conveyance offices.
According to Black's Law Dictionary, a lease is a contract for the exclusive possession of lands for a determinate period; it is a conveyance of realty for a designated period. The essential elements of a lease are the lessee's right to use and enjoy *65 the leased property and the actual or constructive delivery of the property by lessor to lessee. See Williams v. James, 188 La. 884, 178 So. 384 (1938). See also Comment, The Louisiana Law of Lease, 39 TUL.L. Rev. 799 (1965).
A lease is a synallagmatic contract by which one party gives to the other the enjoyment of a thing at a fixed price. La. C.C. Art. 2669: Northeast Louisiana Detachment of Marine Corps League v. City of Monroe, 253 So.2d 107 (La.App.2d Cir. 1971), application denied 260 La. 18, 254 So.2d 619 (La.1971).
Lake Forest relies on Logan v. State Gravel Company, 158 La. 105, 103 So. 526 (1925), in which the plaintiff leased a plantation to defendant to excavate for gravel and sand with a minimum rent or royalty per month. After the lessee defaulted the plaintiff seized lessee's movable property on the premises and claimed a lessor's privilege. Faced with La.C.C. Art. 2678, which provided that all movables and immovables were susceptible of being let out except those things which could be used without being destroyed by that very use, the court held that the law does not forbid the leasing of lands for mining and quarrying purposes and that land used for such purposes could be leased for a portion of the produce of the mine or quarry. Thus, the Court held that the plaintiff-lessor was entitled to the lessor's privilege on the movable property situated on the leased premises.
Finding that the contract in Logan was a lease is not dispositive of this case which involves a completely different agreement and a lien filed against immovable property under the Private Works Act.
Even jurisprudence relating to lease situations in which a subcontractor of the lessee attempted to record liens against the property of the owner does not clearly support Lake Forest's position under the unusual circumstances of this arrangement. In Fruge v. Muffoletto, 242 La. 569, 137 So.2d 336 (1962), the Third Circuit certified three questions relating to a lease situation when a lien is sought on an owner's property for materials ordered by the lessee or tenant. The questions centered on whether the contractor was entitled to a lien under pre-1981 R.S. 9:4801 (presently R.S. 9:4801) or whether pre-1981 R.S. 9:4811 (presently R.S. 9:4806) provided the sole authority for a lien when the one contracting is other than the owner and thus limited the lien to the leasehold rights of the lessee. There, business premises were leased to operate a restaurant. By written and oral agreement the lessee was authorized to undertake at his own expense the needed reconstruction. The owner knew of the project and had been present during the work. After the lessee declared bankruptcy, a lien was placed on the owner-lessor's property. The Louisiana Supreme Court held:
We therefore hold that mere consent or acquiescence of the owner to work being done on leased premises by the lessee or as a result of a contract awarded by the lessee is not sufficient to render the land and improvements subject to the privilege for material, labor, and similar services imposed by R.S. 9:4801; nor does the owner's knowledge of improvements on the premises make the employer his, the owner's agent, so as to impose liability on the owner for wages, materials or claims of the employer's workmen. This is not to say, however, that the owner, through his conduct, may not under certain circumstances create an estoppel which will prevent his contesting the rights of the materialman, laborer, or similar claimant. 137 So.2d at 341.
In Abbeville Lumber Company v. Richard, 350 So.2d 1292 (La.App. 3rd Cir.1977), a father and mother executed a written lease to their son of 60 acres for a primary term of 25 years for a monthly rental of $300.00. The lease provided that if cancelled the lessee would have six months to remove all improvements. After unpaid bills by the son plaintiff lumber company filed a materialman's lien on the property.
Relying upon Fruge v. Muffoletto, supra, the Third Circuit stated that the recorded lease served as notice that the son was merely a lessee (even though he did not actually pay the rent but signed promissory *66 notes for the overdue amounts) and not the owner of the premises. The materials were ordered by the lessee to be incorporated into a structure on the leased property, an improvement which the lessee could remove. The court held that the lien had to attach to the son's interest in the lease under pre-1981 R.S. 9:4811, the substance of which is now La.R.S. 9:4806.
Here the agreement prohibited recordation; therefore, there was no notice as to the contents of the agreement. The improvement did inure to Lake Forest's benefit; the excavation agreement appears more similar to a joint venture than to a lease contract. See Abbeville Lumber Company, supra.
The jurisprudence is clear that when a lessee does or causes to be done the work only as lessee for his own account, no privilege can extend to the land itself. Fruge v. Muffoletto, supra. However, Favret was not causing the excavating for its own benefit. Both Lake Forest and Favret shared profits. Favret's position was not recorded or otherwise made known. The cases dealing with a clear lessor-lessee relationship are therefore distinguishable. The improvements in those cases did not inure to the owner's benefit.
Perhaps more on point is Roman v. Zuppardo, 407 So.2d 65 (La.App. 4th Cir. 1981), which involved an unusual lease. The original commercial lease with a provision for improvements by lessee for his account was cancelled; the new agreement provided that lessee would undertake five projects of reconstruction with the consideration that lessee would pay $300.00 less a month in rent. Clearly the work was for the benefit of the owner/lessor. The situation, different at that point from that of an ordinary lessor/lessee, was held to fall under the purview of the statute allowing a lien against the owner's property.
These sub-contractors were not on notice that they were dealing with Favret as a lessee and cannot be restricted to their claims only against the lessee's rights.
We also reject Lake Forest's contention that the sand pit constituted a mining operation exempt from the Private Works Act. Lake Forest notes that the Oil, Gas & Water Wells Act was passed in 1956 to limit privileges asserted in well matters to the minerals produced or the lease itself. However, sand pits are not included in La. R.S. 9:4861 et seq. Nor does the mining of sand appear as an exception to the definition of work in La.R.S. 9:4808 which lists drilling of oil, gas and water wells, work on railroad beds and structures and public works.
We conclude that the work performed and materials provided to Favret fall within the Private Works Act. The judgment is affirmed.
AFFIRMED.
NOTES
[1] Liens were filed by Cirlot Company and Circle, Inc., for $23,233.00 (June 7, 1983MOB 2413, Folio 458); by A.J. Phillip Trucks, Inc., and/or A.J. Phillip, Inc., for $32,534.00 (June 6, 1983MOB 2413, Folio 456); by Gulf Outlet Fuel and Marine Supplies, Inc. for $16,659.17 (June 30, 1983MOB 2413, Folio 539). Cirlot Company and Gulf Outlet Marine Supplies filed liens against Lot 3 A-6, Section 26, Lakratt Tract, 3rd District, New Orleans, Louisiana. A.J. Phillips Truck, Inc., filed its lien against Lot 385, Section 26 and 27 of the Lakratt Tract.
[2] The original consolidation of statutes relating to liens against immovable property was La.Acts 1922, No. 139. There was a modification by La.Acts 1926, No. 298. La.Acts 1981, No. 724, revised and reenacted the Louisiana Private Works Act.
[3] Long Bell Lumber Company v. S.D. Carr Construction Company, 172 La. 182, 133 So. 438 (1931), held that the clearing of land for the erection of an improvement, construction of a highway, constituted work under a previous version of the Louisiana Public Works Act; Hunt v. LaChere Maison, Inc., 316 So.2d 850 (La.App. 1st Cir.1975), held that a claim for the hauling of dirt, the operating of a bulldozer and the landscaping of a lot on which a house was to be built was lienable under pre-1981 R.S. 9:4812. The Third Circuit also cited two cases from other jurisdictions that had construed similar lien statutes as including the clearing of land.