GUIDRY, Judge.
In this suit to determine the ranking of defendant’s mortgages and plaintiff’s ma-terialman’s privileges, and judicial mortgages recognizing same, defendant, Repub-licbank Dallas, N.A. (hereafter the Bank), appeals that portion of the trial court’s judgment which found plaintiff, Gypsum Systems Interiors, Ltd.’s (hereafter Gypsum), materialman’s lien on Phase I of a construction project superior to the Bank’s *283 mortgage. Plaintiff answered the appeal alleging that the trial court erred in ranking defendant’s mortgage on Phase II of the construction project superior to its ma-terialman’s lien on that phase and in casting plaintiff for one-half the costs of the suit.
A transcript or note of evidence was not taken at the hearing on the rule to determine ranking however, for purposes of appeal, the parties stipulated to certain facts and to the authenticity of certain documentary evidence. From this sparse record, we glean the following facts.
On December 14, 1982, a contract for the construction of The Landing Apartments in Lafayette, Louisiana, was entered into between Q-L Investments, Inc., a Louisiana corporation, and the Braxton Company, Inc. No notice of contract was filed in the public records. The project was to be completed in two phases, both of which were financed by the Bank. The mortgage for Phase I was executed May 31, 1983, and recorded in the records of the Clerk of Court of Lafayette Parish on June 1, 1983. The mortgage for Phase II was both executed and recorded on September 1, 1983. The mortgages were for the sums of 5.5 million and 5.9 million dollars respectively.
After obtaining judicial mortgages against The Landing Apartments in February 1987, plaintiff filed this suit seeking to have those judicial mortgages ranked superior to the conventional mortgages held by the Bank.
The liens on which plaintiff’s judicial mortgages are based are materialmen’s liens and Gypsum argues that these liens should prime the Bank’s mortgages by virtue of the provisions of La.R.S. 9:4820, which reads in pertinent part as follows:
“A. The privileges granted by this Part arise and are effective as to third persons when:
(1) Notice of the contract is filed as required by R.S. 9:4811; or
(2) The work is begun by placing materials at the site of the immovable to be used in the work or conducting other work at the site of the immovable the effect of which is visible from a simple inspection and reasonably indicates that the work has begun. For these purposes, services rendered by a surveyor, architect or engineer, the driving of test piling, cutting or removal of trees and debris, placing of fill dirt, leveling of the land surface, and the placing of materials on the immovable having an aggregate price of less than one hundred dollars shall not be considered.”
The only real issue in this case, at the trial level as well as on appeal, is whether “work”, within the purview of Section 4820, had begun on Phase I of The Landing Apartments prior to June 1, 1983, the date of recordation of the Bank’s Phase I mortgage, and on Phase II, prior to September 1, 1983, the date of execution and rec-ordation of the Bank’s Phase II mortgage.
In support of its contention, Gypsum relies on the deposition of Ethelyn Thum Caldwell, a vice-president of the Bank; draw requests numbers one and eight along with supporting documentation; and, an affidavit from Chuck Allison of The Braxton Company dated December 19, 1983. The Bank relies on its Phase I and Phase II mortgages.
In reaching his conclusions aforestated, the trial judge in written reasons stated as follows:
“Next, the Court finds that the bank actually advanced funds to cover disbursements made to the plaintiff prior to May 31, 1983. These payments certified to by the architect and general contractor and approved by the bank, establish that the plaintiff did begin work and place material on the premises prior to the effective date of the mortgage and in compliance with R.S. 9:4820 A(2). Therefore, as to Phase I, the lien of the plaintiff primes the bank’s mortgage (Exhibit D-l).
As to Phase II, the Court does not find adequate evidence to establish any priority of the plaintiff’s lien over the bank’s mortgage (Exhibit D-2). The demands of the plaintiff in this regard will be denied.”
For the reasons which follow, we find clear error in the trial court’s conclusion that the *284 Gypsum lien on Phase I is superior to the Bank’s mortgage. In other respects, we will affirm.
It is well settled that statutory liens and privileges are stricti juris, in derogation of the common rights of owners and mortgagees and, as such, must be strictly construed against lienors and liberally interpreted in favor of those parties whose common rights are thereby impinged. Louisiana National Bank of Baton Rouge v. Triple R Contractors, Inc., 345 So.2d 7 (La.1977); Lake Forest, Inc. v. Cirlot Company, 466 So.2d 61 (La.App. 4th Cir.1985); C-Craft Marine Services, Inc. v. Llog Exploration Company, 470 So.2d 241 (La.App. 4th Cir.1985), writ denied, 472 So.2d 921 (La.1985).
The deposition testimony of Ms. Caldwell sheds no light on the question of when work began on the construction site. As a vice-president of the Bank, Ms. Caldwell’s involvement in the project was limited to the processing of paper work in Dallas, Texas. Her deposition, however, did confirm that the project was done in two phases.
Likewise, the affidavit of Chuck Allison sheds no light on when work on Phases I and II of the project began. It merely recites that as of December 19,1983, $513,-814.00 had been expended by Q-L in connection with construction of the project.
The only documentation offered by Gypsum which deals with the period preceding June 1,1983, the date of recordation of the Bank’s Phase I mortgage, are the documents titled “Draw # 1, Draw Breakdown” and six pages of supporting papers titled “Application and Certificate for Payment”. Draw # 1 shows various expenditures including $24,511.00 listed as “hard costs”. It is these “hard costs” items on which plaintiff chiefly relies to demonstrate that work had begun on the construction site prior to June 1, 1983.
The six page application and certificate for payment breaks down “hard costs” into the following:
Engineering $ 6,000.00
Permits 8,312.00
Administrative Overhead 1,046.00
Field Office 500.00
Site Layout 2,000.00
Gen. Contractor Overhead 6,153.00 Total $24,511.00
No testimony or other evidence was offered which would explain any of the items listed above. Neither was there any proof offered that any material had been actually placed on the construction site or that any readily visible work not excluded by La.R.S. 9:4820 (services rendered by a surveyor, architect or engineer, the driving of test pilings, cutting or removal of trees and debris, placing of fill dirt or leveling of the land surface) had been performed prior to the recordation of the Bank’s mortgage.
“... It is an elementary rule of law that one who asserts a fact must carry the burden of proof of that fact and the fact must be established by a reasonable preponderance of the evidence.” (footnotes omitted)
Meyer v. State, Department of Public Safety License Control and Driver Improvement Division, 312 So.2d 289 (La. 1975).
Gypsum offered no direct evidence as proof of its claim that work had begun at the construction site prior to recordation of the Bank’s mortgages. Rather, Gypsum relied strictly on circumstantial evidence.
“The plaintiff’s proof may be made not only by direct evidence, but may be established by circumstantial evidence. However, a plaintiff relying upon circumstantial evidence is required to produce evidence which excludes, with a fair amount of certainty, every other reasonable hypothesis but the one relied on. Bickham v. Wax Lumber Company, La.App., 84 So.2d 60, 62 (1 Cir.1955); see also Gassiott v. Gordey, [182 So.2d 170 (La.App. 3rd Cir.1966)].”
Brand v. Kinchen, 310 So.2d 657 (La.App. 1st Cir.1975).
The trial judge found the evidence presented sufficient to meet plaintiff’s burden of proof as to Phase I. We find his conclusion clearly wrong.
Plaintiff’s burden is heavy and by law and jurisprudence, the evidence offered in support thereof must be strictly construed against it while being liberally interpreted in favor of the Bank. Louisiana National Bank of Baton Rouge, supra. While the
*285 evidence offered established a possibility that work had begun on Phase I before the Bank recorded its mortgage, the evidence offered does not exclude, with any degree of certainty, the reasonable hypothesis that such was not the case. No one testified as to the delivery of any material to the building site or of seeing any construction work or materials on the site prior to June 1, 1983. No explanation was made of the hard costs items for engineering, field office or site layout, the only possible items which could have been construed as work at the construction site. The expenditures listed on Draw # 1 as “hard costs” may have been advance payments or deposits or payments made in connection with work conducted off of the premises. In sum, plaintiff simply failed to carry its burden of proof.
As to Phase II construction, we agree with the trial judge. There is no evidence whatever to establish that work began on Phase II before recordation of the Phase II mortgage. Plaintiff apparently considered the project to be one continuous undertaking rather than two separate phases. However, Gypsum offered no proof in support of this contention. Rather, the deposition testimony of Ms. Caldwell along with the two separate phase mortgages establish that the construction was undertaken as two separate projects. The trial court so held and we agree. See Louisiana National Bank of Baton Rouge, supra.
In its late filed brief (appellee filed its brief on the day before oral argument), Gypsum urges that the Bank’s mortgage for Phase I is defective in form and substance and therefore, its recordation cannot affect third parties. In written reasons for judgment, the learned trial judge summarily disposed of this contention as follows:
“Exhibit D-l is defendant bank’s mortgage for Five Million Five Hundred Thousand ($5,500,000.00) Dollars covering Phase I. One of the subscribing witnesses, an attorney for the bank, also signed an acceptance of the mortgage. The Court finds that this does not invalidate the mortgage. A mortgage may be by authentic act or by act under private signature ...”
We agree with the trial court’s disposition of this issue.
Appellant finally argues that the Bank failed to establish the effective date of its mortgages. The Bank’s mortgages were dated and recorded as aforestated. The record clearly establishes that these mortgages became effective vis-a-vis third persons from the dates of their recordation.
Accordingly, for the reasons stated, that portion of the trial court judgment finding the lien and privilege of Gypsum Systems Interiors, Ltd., as recorded in Lafayette Parish under Act Number 85-18552 and as judicially recognized by judgment recorded under Act Number 87-005117, to be superi- or in rank to the Act of Mortgage in favor of Republicbank Dallas, N.A. dated May 31, 1983 and filed under Act Number 83-019741 in Lafayette Parish, is reversed and the mortgage of Republicbank Dallas, N.A., as described above, is recognized as superior in rank to plaintiff, Gypsum Systems Interiors, Ltd.’s lien, privilege and judicial mortgage described herein. In all other respects, the judgment of the trial court is affirmed. Costs at the trial level and on appeal are assessed against plaintiff, Gypsum Systems Interiors, Ltd.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.